## HOWE v. UNITED STATES.
### No. 8424.

Circuit Court of Appeals, Seventh Circuit.
April 25, 1944.

Rehearing Denied June 6, 1944.

J. Albert Woll, U. S. Atty., of Chicago, Ill., Samuel O. Clark, Jr., Sewall Key and Melva M. Graney, Asst. Attys. Gen. (A. F. Prescott and Louise Foster, Sp. Assts. to Atty. Gen., and John B. Stephan, Asst. U. S. Atty., of Chicago, Ill., on the brief), for appellant.

Herbert Bebb, of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a District Court judgment favorable to plaintiff, entered June 25, 1943, in a suit for the recovery of a gift tax for 1937 assessed against and paid under protest by plaintiff's testatrix. In 1935 plaintiff's testatrix created a trust for the benefit of her seven children and in 1937 transferred additional property to this trust, which she reported on her gift tax return at a valuation of $33,500. She claimed seven exclusions, totaling $35,000, thereby showing no gift tax liability. The sole question for decision is whether the gifts to the donor's seven children were of "future interest" as contemplated by Sec. 504(b) of the Revenue Act of 1932, 47 Stat. 169, 26 U.S.C.A. Int.Rev.Acts, page 585, and Treasury Regulation 79 (1936 Ed.) promulgated in conformity therewith.

As a matter of fact, there are only six exclusions involved in this suit for the reason that the Commissioner originally allowed one exclusion. Because of the decision in Helvering v. Hutchings, 312 U. S. 393, 61 S.Ct. 653, 85 L.Ed. 909, it became apparent that the donor was either entitled to seven exclusions or none. The Commissioner then took the position that the gifts were of "future interest" and that the donor was entitled to no exclusions. In the meantime, the statute of limitations had run as to the exclusion allowed, precluding any assessment as to such. We point out this situation because it is stressed by plaintiff, although it has little, if any, significance and certainly has no bearing on the merits of the question for decision.

The statutory provision in question provides:

"In the case of gifts (other than of future interest in property) made to any person by the donor during the calendar year, the first $5,000 of such gifts * * * shall not * * * be included in the total amount of gifts made during such year."

The Treasury Regulation defines "future interests" as those "which are limited to commence in use, possession, or enjoyment at some future date or time."

While the record does not disclose to a certainty, we think it is fair to assume that the property placed in trust during the year in question consisted largely and perhaps entirely of real estate, and the trust is designated by plaintiff as a "liquidating trust." The general purpose as stated is "to conserve the assets while present circumstances render it difficult or impracticable to distribute them and to place the assets as rapidly as practicable in condition for liquidation and distribution." In the language of the trust agreement, the trustees are given the "broadest possible power in holding, management and sale of the property." By an instrument attached to the trust, such powers are described in great detail, including the power and authority "to improve, manage, protect and subdivide said premises or any part thereof, to dedicate parks, streets, highways or alleys and to vacate any subdivision or part thereof, and to resubdivide said property as often as desired, to contract to sell, to grant options to purchase, to sell on any terms, * * * to donate, to dedicate, to mortgage, pledge or otherwise encumber said

property, or any part thereof, to lease said property," and many other powers of similar purport.

Paragraph 4 provides:

"Before binding the trust in any building program or other similar enterprise that may reasonably be expected to involve a total expenditure of over Three Thousand Dollars ($3,000.00), the Trustees shall give to each of the Beneficiaries ten (10) days' notice in writing of the nature of the proposal and in case a majority of the beneficiaries express in writing their disapproval within said ten (10) days, the Trustees shall not proceed therewith."

Paragraph 8 provides:

"The Trustees shall render to the Beneficiaries at least as often as once per year, written accounts showing assets received, income and disbursements, together with general information bearing upon the desirability of continuing the trust."

Paragraph 10 provides:

"The Trustees shall, from time to time, distribute among the Beneficiaries such accumulated income as may in their judgment not be needed as a reserve for taxes and other obligations."

Paragraph 11, among other things, precludes the beneficiaries from "anticipation or assignment inter vivos of any income or principal." Paragraph 12 provides:

"Upon a majority of the Beneficiaries or of the survivors of them joining in a written demand that the estate be closed and distributed, the Trustees shall comply with said demand within one year from the presentation thereof to the Trustees, but in any event such closing shall not be later than eighteen years after the death of the Donor."

It would unduly prolong our opinion, as well as serve no useful purpose, to analyze or discuss the many cases relied upon by the respective parties. After all, the controlling principles of law have been settled and in each case it is a question as to whether such principles are applicable to the facts of the case. The definition of a "future interest," contained in Treasury Regulation 79, has been approved in United States v. Pelzer, 312 U.S. 399, 403, 61 S. Ct. 659, 85 L.Ed. 913, and leaves no room for doubt as to the test to be employed. As stated by this court in Commissioner v. Glos (Gloss), 7 Cir., 123 F.2d 548, 550:

"The sole statutory distinction between present and future interests lies in the question of whether there is postponement of enjoyment of specific rights, powers or privileges which would be forthwith existent if the interest were present."

This test, in varying phraseology, has been frequently stated by this court. Commissioner v. Gardner, 7 Cir., 127 F.2d 929; Commissioner v. Lowden, 7 Cir., 131 F.2d 127; Sensenbrenner v. Commisisoner, 7 Cir., 134 F.2d 883.

The critical question, therefore, is whether the donees of the instant trust acquired an interest capable of present and immediate enjoyment or whether it was one "limited to commence in use, possession, or enjoyment at some future date or time." Plaintiff stresses the general purpose of the trust and contends that there was created merely the mechanism for converting the trust property into cash and making distribution. Assuming that such was the purpose, we must still look to the form of such mechanism with a view of ascertaining what, if any, restrictions were placed upon the rights of the donees to the present enjoyment of the trust benefits. We need not repeat the broad powers reposed in the trustees which might be exercised for a term of eighteen years after the donor's death.

To meet this long trust duration, plaintiff relies upon Paragraph 12 of the trust agreement (heretofore quoted), which confers upon a majority of the donees the right upon demand made to the trustees to require a termination of the trust within one year from the time of such demand. This at once raises a contingency which may or may not happen. Certainly the right of each beneficiary to present enjoyment is contingent upon such majority action. It appears that Ryerson v. United States, 312 U.S. 405, 408, 61 S.Ct. 656, 658, 85 L.Ed. 917, is decisive against plaintiff's contention. The court, in discussing the right of the donees to terminate the trust, stated:

"In any case use and enjoyment of any part of the trust fund by either was postponed until such time as both join in the exercise of the power."

Plaintiff attempts to distinguish the Ryerson case because unanimous action by the two beneficiaries was there required, in contrast to majority action in the instant case. We are unable to discern, however, how such distinction could make any difference in the principle which the court enunciated. It follows that under

the principle thus announced the corpus of the trust constituted a gift of future interest within the meaning of the Revenue Act.

Plaintiff's contention with reference to the trust income is no more convincing than that concerning the corpus. Much reliance is placed upon Paragraph 10 (heretofore quoted), which requires the trustees "from time to time" to make such distribution of income "as may in their judgment not be needed as a reserve for taxes and other obligations." It is contended that in view of the purpose of the trust this should be construed as a requirement that distribution be made at reasonable periods, such as annually. With this construction, it is claimed that the facts are similar to those in Commissioner v. Lowden, supra. It should be noticed, however, that in the Lowden case, wherein this court held that the donee's interest was present, the trust agreement specifically required the payments in question to be made annually. In deciding that the interest was not future, the court on page 128 of 131 F.2d stated:

"To constitute a future interest mere uncertainty of amount must be co-existent with restriction upon or postponement of immediate use and enjoyment."

We are of the view that the Lowden case is not applicable to the facts in the instant case. This is so for the reason that in our judgment the power of the trustees in distributing income is not restricted in the manner claimed by plaintiff. As already pointed out, the trustees were vested with broad powers in the management and control of the real estate, from which presumably the trust income was to be obtained. They were authorized by Paragraph 4 (heretofore quoted) to engage in a building program involving an expenditure of not over $3,000. Contrary to plaintiff's contention, we think there is nothing in the trust agreement precluding the trustees in the exercise of their discretion from using the trust income for such purpose. This view is strengthened by the fact that the trustees are specifically authorized (Paragraph 10) to "reserve for taxes and other obligations." With the specific authority to spend $3,000 on a building program, it seems clear that this is an obligation for which income could be reserved. If the trustees were authorized, as we think they

were, to spend $3,000 from income, certainly it would follow that there was to that extent a postponement of the donees' right to a present enjoyment of income. More than that, the trustees, with the consent of a majority of the beneficiaries, could spend an amount in excess of $3,000 for improvements. Thus, any right which a beneficiary had to a distribution of income in excess of that amount was subject to be destroyed, or at any rate postponed, by majority action.

Furthermore, we are of the view that the trustees' discretion in this respect has all the legal earmarks of authority to accumulate income. We are unable to discern any difference in principle between this authority conferred upon the trustees and an express accumulation provision. Theoretically at any rate, the expenditures made by the trustees for improvement of the real estate would increase the value of the corpus and thereby increase the proceeds for final distribution. It is the equivalent of authority by the trustees to accumulate and distribute at some future time.

We need not discuss other questions argued in the briefs. What we have said is sufficient, so we think, to show that the judgment of the lower court was erroneous. It is, therefore,

Reversed.