Irwin S. **CHANIN**
v.
The **UNITED STATES.**

Henry I. **CHANIN**
v.
The **UNITED STATES.**

Sylvia **CHANIN**
v.
The **UNITED STATES.**
Nos. 56–64, 57–64, 59–64.

United States Court of Claims.
April 19, 1968.

Louis Bender, New York City, attorney of record, for plaintiffs.

D. Knox Bemis, Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant. Philip R. Miller, Washington, D. C., of counsel.

## OPINION

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

PER CURIAM:

These cases were referred to Trial Commissioner Roald A. Hogenson with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a). The commissioner has done so in an opinion and report filed on July 18, 1967. Exceptions to the commission-er's findings, and recommended conclusions of law were filed by the parties and the case was submitted to the court on the briefs of the parties and oral argument of counsel. Since the court agrees with the commissioner's opinion, findings and recommendation for conclusion of law, as modified, it hereby adopts the same, as modified, as hereinafter set forth, as the basis for its judgment in this case.* Therefore, plaintiffs are entitled to recover and judgment is entered for plaintiffs with the amounts of recovery to be determined pursuant to Rule 47(c).

Commissioner HOGENSON's opinion, as modified by the court, is as follows:

These three consolidated cases are the individual suits of two brothers, Irwin S. and Henry I. Chanin, and of the former's wife, Sylvia, all residents of New York, N. Y. Each plaintiff seeks to recover the amount of the deficiency (principal plus interest thereon) assessed by the Internal Revenue Service and paid by such plaintiff-taxpayer on his (her) federal gift tax return for the calendar year 1958, with interest as provided by law. The amounts of the deficiencies paid are: Irwin, $2,732.80; Henry, $224.56; and Sylvia, $1,838,88. Each plaintiff timely filed a claim and a supplementary claim for refund, and after more than 6 months had transpired without a ruling thereon by the Internal Revenue Service, each plaintiff filed his petition herein, asserting the same grounds for recovery as were asserted in the administrative claims.

On February 24, 1958, all of the capital stock of the 63rd Street and 3rd Avenue Corporation, a New York corporation (hereinafter 63rd Street), was owned 75 percent (7½ shares) by Irwin and 25 percent (2½ shares) by Henry. On this date, the value of Irwin's shares was $151,041.47 and of Henry's shares, $50,-347.15, or a total of $201,388.62. On the same date, they transferred all of their stock in 63rd Street to Sterling Estates,

---

* The concurring opinion of DAVIS, Judge, in which NICHOLS, Judge, joins, follows the opinion of the Trial Commissioner which has been adopted by the court.

Inc., a New York corporation, hereinafter called Sterling. Sterling was a wholly-owned subsidiary of Green Acres Estates, Inc., a family-owned New York corporation, hereinafter called Green Acres. The nine stockholders of Green Acres were all adults and were all members of the Chanin family, including plaintiffs herein, two sons and two daughters of Irwin, and a brother and a sister of Irwin and Henry. There were no restrictions on the stockholders in the exercise of their rights of ownership of the Green Acres stock.

On April 24, 1958, 63rd Street was liquidated and its assets and liabilities transferred to its parent corporation, Sterling. In August 1958, Sterling sold the property it had acquired in such liquidation for a gross sum of $675,000, the net proceeds from which were used to determine the above-mentioned $201,-388.62 value of the 63rd Street stock transferred by Irwin and Henry to Sterling.

As a result of the transfer by Irwin and Henry of all of the stock of 63rd Street to Sterling, the wholly-owned subsidiary of Green Acres, the combined equity interests of all stockholders in Green Acres were increased $151,041.47 by Irwin's transfer and $50,347.15 by Henry's transfer. These total increases, as allotted to the respective stockholders of Green Acres in proportion to the stock holdings of each were as follows:

| Stockholder | Shares owned | Increase in equity from the transfer | |
|---|---|---|---|
| | | of Irwin | of Henry |
| Plaintiff Irwin | 125 | $18,880.19 | $6,293.39 |
| Plaintiff Henry | 150 | 22,656.22 | 7,552.07 |
| Plaintiff Sylvia | 125 | 18,880.18 | 6,293.39 |
| Paul Chanin | 150 | 22,656.22 | 7,552.07 |
| Doris Friedman | 100 | 15,104.15 | 5,034.72 |
| Joan Schwartz | 100 | 15,104.15 | 5,034.72 |
| Marcy Chanin | 150 | 22,656.22 | 7,552.07 |
| Aron Chanin | 50 | 7,552.07 | 2,517.36 |
| Bess C. Paulson | 50 | 7,552.07 | 2,517.36 |
| Totals | 1,000 | 151,041.47 | 50,347.15 |

Paul and Marcy Chanin are the sons, and Doris Friedman and Joan Schwartz are the daughters of Irwin; and Aron Chanin and Bess C. Paulson are the brother and sister of Irwin and Henry.

As can be readily computed from the foregoing, the proportionate stock holdings in Green Acres varied among the nine stockholders from the low of 5 percent held by the brother and also the sister of Irwin and Henry, to the high of 15 percent held by Henry and also by each of the two sons of Irwin.

The only claimed gifts involved in plaintiffs' respective gift tax returns were the transfers of the 63rd Street stock to Sterling. Irwin reported total gifts of $125,867.89, deducted $53,493.85 thereof, as the portion thereof he consented to have reported by his wife Sylvia, to arrive at the sum of $72,374.04, from which he deducted $24,000 for eight donees at the statutory exclusionary rate of $3,000 for each donee, and after other deductions, reported taxable gifts as $8,933.95 and a gift tax of $319.03, which he paid.

Sylvia reported as total gifts the sum of $53,493.85 as the portion of the $125,-867.89 gifts of her husband, Irwin, which she consented to have reported by her, deducted $24,000 for eight donees, and claimed specific exemption from tax on the balance.

Henry reported total gifts of $36,-501.69, deducted $21,000 as exclusions

for seven donees, and claimed specific exemption from tax on the balance.

In assessing the above-mentioned deficiencies, the Internal Revenue Service disallowed the donee exclusions claimed by each plaintiff, holding that the gifts were of future interests in property. Each plaintiff herein claims entitlement to six or more donee exclusions (Irwin, 8; Henry, 6; and Sylvia, 7) on the theory that gifts of present interests were made to the various stockholders of Green Acres, and each plaintiff also claims that in each of the gift tax returns, there was an overstatement of the amount of gifts. Irwin contends that his taxable gifts in 1958 (not including the $53,493.85 reported by his wife Sylvia) before subtracting exclusions and exemptions were $62,933.94; Henry contends that his gifts were $20,138.86; and Sylvia, $47,200.46, or alternatively, $50,347.16, or $53,493.85.

The parties are in basic agreement that the gifts of the 63rd Street stock by Irwin and Henry to Sterling (the wholly-owned subsidiary of Green Acres) were gifts to the stockholders of Green Acres. The basic issues in these cases are: (1) Whether such gifts of present interests, as contended by plaintiffs, or gifts of future interest, as contended by defendant, within the meaning of section 2503(b) [1] of the Internal Revenue Code of 1954; and (2) the

questions as to the determination of the amounts of the gifts, before subtracting exclusions and exemptions made during 1958 by Irwin, Henry and Sylvia.

## PRESENT OR FUTURE INTERESTS

As provided in section 2503(b), the doner is allowed an annual donee deduction of the first $3,000 of gifts to any person during the calendar year, so long as the gift is not one of "future interests" in property. Defendant contends that the doners, Irwin, Henry, and Sylvia, are not entitled to any donee exclusions for the taxable year on the ground that their respective gifts to the wholly-owned subsidiary corporation (Sterling), though concededly gifts to the separate stockholders of the parent corporation (Green Acres),[2] were not gifts of present but rather of future interests. Defendant's position is sustained in this respect.

Future interests in property are defined by Treas.Reg. § 25.2503–3, 1958–2 Cum.Bull. 639, as all "interests or estates, whether vested or contingent * * which are limited to commence in use, possession or enjoyment at some future date or time." This regulation is derived from similar language contained in official reports of committees of Congress,[3] and such language has been held by the Supreme Court to be a con-

---

1. § 2503 Taxable gifts.

    &ast; &ast; &ast; &ast; &ast;

    (b) Exclusions from gifts.

    In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1955 and subsequent calendar years, the first $3,000 of such gifts to such persons shall not, for purposes of subsection (a), be included in the total amount of gifts made during such year. Where there has been a transfer to any person of a present interest in property, the possibility that such interest may be diminished by the exercise of a power shall be disregarded in applying this subsection, if no part of such interest will at any time pass to any other person.

2. Both parties are agreed that each stockholder and not the corporate entity is to be considered a donee. In Helvering v. Hutchings, 312 U.S. 393, 61 S.Ct. 653, 85 L.Ed. 909 (1941), the Supreme Court held that a taxpayer-donor was entitled to a donee exclusion for each beneficiary of the trust, rejecting the contention that the trust entity was the donee. This concept was extended to the analogous situation of a gift to a corporation. See Heringer v. Commissioner of Internal Revenue, 235 F.2d 149 (9th Cir. 1956), cert. denied 352 U.S. 927, 77 S.Ct. 225, 1 L.Ed.2d 162; Treas.Reg. § 25.2511–1(h) (1), 1958–2 Cum.Bull. 645–646.

3. H.R.Rep. No. 708, 72d Cong., 1st Sess., p. 29; S.Rep. No. 665, 72d Cong., 1st Sess., p. 41.

trolling expression of the statutory purpose. United States v. Pelzer, 312 U.S. 399, 403, 61 S.Ct. 659, 85 L.Ed. 913 (1941). See also Commissioner of Internal Revenue v. Wells, 132 F.2d 405, 407 (6th Cir. 1942); Welch v. Paine, 120 F.2d 141, 142–143 (1st Cir. 1941). As was stated by the court in French v. Commissioner of Internal Revenue, 138 F.2d 254, 257 (8th Cir. 1943), paraphrasing the regulation: "Unless the donee is entitled unconditionally to the present use, possession, or enjoyment of the property transferred, the gift is one of a future interest for which no exclusion is allowable under the statute." Similarly, the Supreme Court in Fondren v. Commissioner, 324 U.S. 18, 20, 65 S.Ct. 499, 501, 89 L.Ed. 668 (1945), stated that it is not enough to bring the exclusion into force that the donee has vested rights, but "he must have the right presently to use, possess or enjoy the property."

■ ■ Clearly, each donee in these cases did not have any present or immediate right to use, possess or enjoy the donated property, i. e., the 63rd Street stock. Such stock was donated and transferred to Sterling, Green Acres' wholly-owned subsidiary. Even assuming that Green Acres in effect acquired title to such stock at the time of the gifts, a stockholder-donee could use, possess or enjoy such stock only upon a liquidation of Green Acres or a declaration of a Green Acres dividend in kind, the first of which usually requires joint action of a majority of the stockholders and both of which require joint action of the corporation's directors.[4] Still assuming that Green Acres was the direct transferee of the 63rd Street stock, and thus acquired direct control of the disposition of the assets and liabilities of 63rd Street, there could be no distribution of dividends from the 63rd Street property (whether in cash, property, obligations or stock) except by resolution of the board of directors of Green Acres, or common consent of the stockholders.[5] Of the nine stockholders of Green Acres, only Irwin was an officer, its president, and only Irwin and Henry were directors. No stockholder-donee of Green Acres held more than 15 percent of its voting stock, and it would have required at least four of the nine stockholders to take majority action, and no single stockholder could have compelled the payment of a dividend or the distribution of the property of the gifts.

If it be remembered that the 63rd Street stock was transferred not to Green Acres but to Sterling, not only was it necessary to have joint action of the donees to transfer the gift property or any proceeds out of Green Acres, but first some kind of corporate action would have been required to pass the gift property or proceeds from Sterling to Green Acres. The record herein is silent as to who were the officers or directors of Sterling.

■ Since each stockholder-donee's use, possession or enjoyment of the gift property or its proceeds were so dependent upon contingencies beyond his control, the gifts must be considered gifts of future interests. Ryerson v. United States, 312 U.S. 405, 61 S.Ct. 656, 85 L.Ed. 917 (1941); Howe v. United States, 142 F.2d 310 (7th Cir. 1944), cert. denied 324 U.S. 841, 65 S.Ct. 585, 89 L.Ed. 1403 (1945); Skouras v. Commissioner of Internal Revenue, 188 F.2d 831 (2d Cir. 1951). Moreover, the benefits to any of the stockholder-donees herein, which might accrue from any future joint action, were so speculative at the time the gifts were made as to be practically unascertainable, at least within the limits of the facts established in these cases. Such benefits would obviously depend upon policy and expertise of corporate management, economic developments, and various other risks inherent in corporate and other business activities.

---

4. See Ballentine on Corporations (Rev. 1946) §§ 301–302 at 709–711.

5. Id., § 239 at 562–563.

The case of Heringer v. Commissioner, n. 2, supra, is in substance like the subject cases, and if followed, is decisive of the future interest issue. Two brothers and their respective wives organized a family corporation, 40 percent of the outstanding stock was issued to them, with the remaining 60 percent issued to their 11 children in separate share holdings. The four parents thereafter conveyed their farm lands by deeds of gift to the corporation. No stockholder owned a majority interest. Applying the test provided by the Supreme Court in the *Pelzer* and *Ryerson* cases, supra, the court held that the interests taken by the children-stockholders as a result of the gifts to the corporation were "future interests" within the meaning of the statute. The court stated:

> Here the corporation was given title to the transferred land. Shareholders of the corporation could possess or enjoy the land or income derived therefrom only upon declaration of dividends, an act which required the joint action of members of the competent corporate body and which no single shareholder could perform. * * * [235 F.2d at 152]

Plaintiffs contend that the decision in the *Heringer* case is erroneous and that such opinion misinterprets the import of the *Pelzer, Ryerson, Wells,* and *Skouras* cases, supra.

The central theme of plaintiffs' position is that in subject cases each stockholder-donee received as a result of the pertinent gifts a definite amount of increase in net worth of his own stock holdings in Green Acres, which increase each could immediately use, possess or enjoy. Stated otherwise, plaintiffs contend that the gifts immediately increased the equity value of each stockholder's shares of Green Acres, and each acting independently could have sold, given, or devised his increased interest in Green Acres. According to plaintiffs, the present interest requirement is met as to the pertinent gifts by the immediately added net worth of Green Acres, which each stockholder could promptly enjoy, use, or dispose of without intervening contingencies.

If plaintiffs' position were accepted, donee exclusions would be allowed in every case in which the donee received a future interest in property, which was marketable, thus doing violence to the well recognized statutory purpose of the pertinent statute. Rosa A. Howze, 2 T.C. 1254, 1256 (1943). For example, if a donor conveyed over a life estate in real estate to an elderly person with a relatively short life expectancy, with the remainder unqualifiedly vested in a relatively young third party, the remainderman has a vested interest in the property, and it is quite likely that he could find a buyer of his "future interest." Certainly such a remainderman (as soon as the gift was made) "acting independently could have sold, gifted or devised his interest" to use the language employed by plaintiffs. Almost every "future interest" in property, if not subject to restrictions on alienation, confers some present benefit by virtue of the fact that the donee could dispose of it immediately. Of course, the marketability of a "future interest" may not be as great as that of a fee title to property, and the sales price of the remainder in the above-stated example might be substantially affected by the life estate burden on the property, but it cannot be doubted that the donee has the right to dispose of his "future interest." Such a remainderman-donee has a future interest within the meaning of the pertinent statute, even though his interest be unqualifiedly vested at the time of the gift, Welch v. Paine, supra, 120 F.2d at 143, and even though he has an immediate right to sell, devise, or otherwise dispose of his future interest. Alma S. Hay, 47 B.T.A. 247 (1942). Also, a future interest may exist under the statutory meaning of that phrase even though both the identity of the donees and the amounts of the gifts

are definite and certain at the time of the gifts, Fondren v. Commissioner, supra, 324 U.S. at 26–27, 65 S.Ct. 499.

Plaintiffs' concept of "future interests" must be rejected as it would do violence to the long established interpretation of that statutory phrase, by drastically limiting its meaning to property restricted as to alienation.

Moreover, it must be remembered that the individual stockholder-donee herein never acquired the 63rd Street stock donated by Irwin and Henry, nor even the assets and liabilities controlled by such stock, and there is neither evidence nor facts established in these cases, from which it can be determined to what extent, if any, the value of any individual stockholder-donee's minority stock holdings in a closely held family corporation (Green Acres) was increased as a result of the gifts involved in these cases. The increase in equity interests, represented by net book values of assets, constitute only one of a number of factors used in determining the fair market value of minority stock holdings in a closely held corporation. Williams v. Commissioner of Internal Revenue, 44 F.2d 467, 470 (8th Cir. 1930).

In support of their position, plaintiffs point to Example (6) of § 25.2503–3 (Future Interests in Property) of the Gift Tax Regulations, 1958–2 CUM.BULL. 627, 640, which example reads as follows:

> *Example (6)*. L pays premiums on a policy of insurance on his life. All the incidents of ownership in the policy (including the right to surrender the policy) are vested in M. The payment of premiums by L constitutes a gift of a present interest in property.

However, this example cannot reasonably be construed to support the conclusion, as contended by plaintiffs, that if the identity of the donee is fully ascertainable, and if the amount of the gift is definite, and if the donee's interest in the donated property cannot be defeated, there is a gift of a present interest in property. To keep the insurance policy in force and effect, the owner must pay the required periodic premiums, or have them paid by some volunteer. In reality, the doner paid a present obligation which the owner would otherwise have had to discharge, and the effect is the same as if the doner had paid the premium amount directly to the owner who in turn paid over the same to the insurance company. There was no postponement of the benefits of the gift property. Plaintiffs' reliance upon Revenue Ruling 55–408, 1955–1 Cum.Bull. 113, is likewise misplaced. That ruling applies Example (6) in a concrete case in which the donor paid premiums to the insurance company on a life insurance policy wholly owned by the donee of the premium gifts, and also holds that the gift of the policy itself to the donee was a gift of a present interest, when full ownership of the policy was transferred, even though the policy had no immediate cash value. Suffice it to say that no ownership, let alone full ownership, of the 63rd Street stock was transferred to the stockholder-donees herein, nor do the facts establish that they could presently enjoy the benefits of the stock transfer.

## AMOUNT OF GIFTS BY HENRY

■ The total value of the 63rd Street stock donated by Irwin and Henry to Sterling, the wholly-owned subsidiary of Green Acres, hereinafter called the donee corporation, was $201,388.62. Henry's share was $50,347.15; and Irwin's, $151,041.47. Since Henry owned 15 percent of the donee corporation, he retained a 15 percent interest in the stock transferred, or $30,208.39 of the $201,388.62; and with Irwin's 12½ percent interest in the donee corporation, he retained a 12½ percent interest in the stock transferred, or $25,173.58 of

the $201,388.62. Thus the substance of the overall transaction was that the total amount of gifts made by each is to be computed as follows:

|  | Henry | Irwin |
|---|---|---|
| Value of stock transferred | $50,347.15 | $151,041.47 |
| Less value of interest retained | 30,208.29 | 25,173.58 |
| Total amount of gifts | 20,138.86 | 125,867.89 |

To the extent that each donor retained an interest in the subject matter of the overall gifts, the transfer was in effect from one pocket to another of that donor, a mere change in form of title as opposed to a real change of economic benefits, and thus the transfer to that extent was not a taxable gift within the gift tax statute. Estate of Sanford v. Commissioner of Internal Revenue, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20 (1939); Helvering v. Hutchings, supra, 312 U.S. at 396, 61 S.Ct. 653.

Subject, of course, to a proper division of Irwin's total gifts between him and his wife Sylvia, pursuant to their consent to have Sylvia treat 50 percent of Irwin's gifts as gifts by her, the above computation of total gifts has the effect of imposing upon the donors gift taxes only to the extent of the gifts of each of them to the other stockholders of the donee corporation. Failure to decrease the value of the gifts by the extent to which each donor retained an interest would result in possible double taxation. This could conceivably occur in one of two ways: (1) If either donor was subjected to a gift tax on the full value of his transfer to the donee corporation and subsequently died without having disposed of his stock holdings in such corporation, an estate tax on the full value of such stock might be imposed; or (2) After paying a gift tax on the full value of his transfer, either donor might make a gift of his stock in the donee corporation and be subjected to a gift tax on the full value of such stock.

Further support for the above computation is found in section 2512(b) of the Internal Revenue Code of 1954, 68A Stat. 406, reading as follows:

(b) Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

It is reasonable to conclude that to the extent to which each donor retained an interest in the donated 63rd Street stock, by the increase in value of his stock in the donee corporation, he received consideration which must be subtracted from the value of the donated stock to arrive at the amount of the gift.

Relying upon both the double taxation and the consideration reasons, the court in Heringer v. Commissioner of Internal Revenue, supra, determined the amount of gift by reducing the value of the donated land by 40 percent, where the aggregate stock holdings of the four donors was 40 percent of the outstanding stock of the donee corporation. After quoting the statutory language now contained in section 2512 (as quoted above), the court commented:

It is important to note here that Congress considered the problem of computing the amount of gift where the donor receives a consideration for the transfer and determined in favor of a net result. [235 F.2d at 152]

In applying the rationale that to the extent of their retained interests, the donors made no gift, the court stated:

> Giving the language of the statute its ordinary meaning petitioners' intention was to donate not more than 60% of the transferred property. Where, as here, a direct consequence of their action was to proportionately increase the value of petitioners' holdings, reason and justice require a finding that petitioners parted with no more. In so applying the statute we recognize the importance of realistic considerations, Helvering v. Hutchings, supra. [Id. at 153]

Regarding defendant's argument that it is erroneous to assume that the increase in equity value of any Green Acres stockholder's share (caused by the gifts herein) resulted in a direct financial benefit to him in that amount, it must be remembered that consideration is not now being given to whether there was a gift of present or future interests, but rather with the computation of the value of the gifts, whether of present or future interests, deducting benefits retained by the donors. In this connection Treas.Reg. § 25.2511–1(h) (1), 1958–2 Cum.Bull. 645–646, provides in pertinent part as follows:

> (h) The following are examples of transactions resulting in taxable gifts and in each case it is assumed that the transfers were not made for an adequate and full consideration in money or money's worth:

> (1) A transfer of property by a corporation to B is a gift to B from the stockholders of the corporation. If B himself is a stockholder, the transfer is a gift to him from the other stockholders but only to the extent it exceeds B's own interest in such amount as a shareholder. A transfer of property by B to a corporation generally represents gifts by B to the other individual shareholders of the corporation to the extent of their proportionate interests in the corporation. * * *

In these cases, the parties stipulated that Henry's share of the donated stock had a value of $50,347.15 and Irwin's, $151,041.47, and finding 3, that such were the values, is based upon such stipulation. In accordance with the above-quoted example, the transfers (aggregating $201,388.62) to the donee corporation were gifts by the donors to the other individual shareholders of the corporation to the extent of their proportionate interests in the corporation, i. e., in accordance with their proportionate increases in their equity interests. Certainly when the gifts to the donee stockholders are to be evaluated on this basis, it is fair and reasonable to determine the retained interests in the same manner. At the least that is true, as here, in the absence of any real fair market value, adequately ascertained. The whole is thus made equal to the sum of its parts. Otherwise, different standards would be applied on the "transferred" and "received" sides of the equation. The donors were in a sense also donees, except that it is illogical to say that a person can give property to himself. But in lieu of being a donee, the donor has "received" in the sense that he had retained his proportionate share of the overall gifts.

Thus, it is concluded that Henry's total gifts amounted to $20,138.86.

## GIFTS DEEMED MADE BY SYLVIA

From the foregoing analysis and conclusion with respect to the amount of Henry's gifts, it is obvious that it would be concluded that Irwin's gifts amounted to $125,867.89 (the $151,041.47 value of his donated stock less the $25,173.58 interest he retained as a result of the concurrent transfers) but for the fact that Irwin and his wife, Sylvia, consented pursuant to section 2513 of the Internal Revenue Code of 1954, 68A Stat. 406, that Sylvia would report one-half of Irwin's gifts of 63rd Street stock as gifts by her. Sylvia owned (as did Irwin) 125 shares of stock in Green Acres, and her equity interest in that donee corporation was increased as a

result of Henry's gifts by $6,293.39, and as a result of Irwin's gifts by $18,880.18, the same increases which occurred as to Irwin's equity interest.

Section 2513 provides that a "gift made by one spouse to any person other than his spouse shall * * * be considered as made one-half by him and one-half by his spouse * * *" provided both spouses consent.

As stated above, his total gifts are computed by subtracting from the value of the property which he donated ($151,041.47) Irwin's retained benefits of $25,173.58, comprised of $18,880.19, resulting from his own transfer and $6,293.39, resulting from Henry's transfer.

■■ In computing Sylvia's reportable part of Irwin's total gifts, consideration must be given to the fact that Sylvia benefited from the concurrent gifts by an increase in her equity interest in the donee corporation, i. e., $18,880.18 from Irwin's transfer and $6,293.39 from Henry's transfer. As to Sylvia's benefit from Henry, Irwin knew

in making his transfer in consideration of Henry's transfer that Sylvia would so benefit from Henry's transfer, just as he knew that Sylvia would benefit ($18,880.18) from his transfer. When Irwin made his transfer, Henry benefited by $22,656.22 as to the increase in his equity interest resulting from Irwin's transfer, and Sylvia benefited $6,293.39 from Henry's transfer. Where individual A (Irwin) transfers to B (Henry) in consideration of B's transfer to C (Sylvia), A has in reality transferred to C. Cf. Hilda Furst, 21 T.C.M. 1169 (1962). Therefore, Sylvia's benefit of $6,293.39 from Henry's transfer, as well as her benefit of $18,880.18 from Irwin's transfer, must be eliminated in computing the gift tax due on assumed transfers by Sylvia, since neither is a gift by Irwin to any person other than his spouse. In reality Sylvia's benefit from Henry's transfer was a gift by Irwin to Sylvia.

It is concluded that the total gifts by Sylvia amounted to $50,347.16, computed as follows:

| | | |
|---|---|---|
| Gross transfers by Irwin | | $151,041.47 |
| Less: | | |
| Increment in Irwin's Equity from Irwin's transfer | $18,880.19 | |
| Increment in Irwin's Equity from Henry's transfer | 6,293.39 | |
| Increment in Sylvia's Equity from Irwin's transfer | 18,880.18 | |
| Increment in Sylvia's Equity from Henry's transfer | 6,293.39 | 50,347.15 |
| Irwin's gifts to persons other than Sylvia | | $100,694.32 |
| 50% deemed gifts made by Sylvia | | $ 50,347.16 |

---

## AMOUNT OF GIFTS BY IRWIN

■ From the foregoing, it follows that Irwin's total gifts were $125,867.89, from which must be deducted the $50,347.16 reportable by Sylvia, with a marital deduction of $12,586.79 (one-half of the sum of $18,880.18 and $6,293.39), and accordingly, Irwin's net gifts were $62,933.94.

DAVIS, Judge (concurring):

I join the court's opinion but wish to add, as part of my views, the portion of Commissioner Hogenson's opinion which the majority of the court has deleted. After the second quotation from Heringer v. Commissioner of Internal Reveune, 235 F.2d 149 (9th Cir.), cert. denied, 352 U.S. 927, 77 S.Ct. 225,

1 L.Ed.2d 162 (1956), under the heading "Amount of Gifts by Henry," the commissioner said:

"The defendant's objection to the above method of computation of Henry's gift is that section 2512(b) provides in effect that Henry's transfer is deemed a gift, subject to the gift tax, to the extent that the value of the property he transferred exceeded the consideration he received for it. Relying on Commissioner of Internal Revenue v. McLean, 127 F.2d 942 (5th Cir. 1942), defendant asserts that the burden of proving consideration for his transfer is on Henry, and that he failed to prove consideration for two reasons: (1) He has not shown to what extent the concurrent transfers by him and Irwin resulted in financial benefit to him; and (2) there is no showing that Henry's transfer was induced by the financial benefit resulting to him from Irwin's concurrent transfer to the corporation. Defendant relies on Drybrough v. United States, 208 F.Supp. 279 (W.D.Ky.1962), in which the court held that the value of capital stock in a closely held corporation, there being no market sales of such stock, was to be determined upon consideration of all relevant factors, such as earning capacity, anticipated profits, book value, and dividend yield. After consideration of expert testimony, the court determined the value of such stock by discounting by 35 percent the fair market value of the real estate comprising the sole assets of the corporation. Defendant contends that it is erroneous as a matter of law to assume that an increase in the book value of any Green Acres stockholder's share resulted in a direct financial benefit to him in that amount, i. e., necessarily caused a proportionate increase in the value of a minority stockholder's share. Relying on Commissioner of Internal Revenue v. McLean, supra, defendant contends that it is also erroneous to assume that any benefit received by one donor because of a concurrent transfer of another is automatically consideration for his transfer, arguing that

for one transfer to be in consideration for another, more is required than that the two transfers be concurrent. Defendant would have this court hold that the total amount of Henry's gift by reason of his transfer was at least $36,501.69, the amount stated by Henry to be such in his 1958 gift tax return, which amount the Internal Revenue service accepted in assessing Henry's gift tax deficiency only on the basis of disallowing donee exclusions. In fact, in accordance with defendant's theory, Henry would have been charged with the total value of his gifts ($50,347.15) if he had been assessed properly.

"In Commissioner v. McLean, supra, taxpayer and his wife simultaneously made transfers of property in trust to each other for life with remainder to their daughter. The court held that both transfers were gifts, rejecting taxpayer's argument that the transfers were in consideration of each other, and stated:

The issues were submitted to the Board on a stipulation to which was attached the transfers in trust which are in question here. Neither in the transfers nor in the stipulation is there any statement that the transfer by petitioner was in consideration of the transfer by his wife or vice versa. Nor is there any evidence from any source that the transfers in trust were other than donative in intent and in effect. Taxpayer may not by merely pointing to the fact that: the trusts were created at the same time; were in equal amounts; and contained reciprocal provisions, claim a discharge of the burden resting on him to show that the transfers were made in consideration of each other. The Board well said: "If any agreement existed between the petitioners for the creation of the trusts and for the transfers, that fact would be best known to them and they should have proved it," and we are therefore in agreement with the ruling that the 1933 and 1934 transfers were not upon consid-

eration but were donative, * * *. [127 F.2d at 943]

If it must be concluded that the *McLean* case establishes a rule that in all cases of concurrent gifts there must be bargained-for consideration which must be proved by a positive showing of negotiations between the concurrent donors, then the *Heringer* case, supra, is deemed to be in direct conflict, and the latter is accepted as the better precedent. However, under the facts in the *McLean* case, there is obviously a strong inference that the taxpayer and his wife, as concurrent transferors, by virtue of the husband-wife-daughter relationship and other circumstances involved, had donative intents as to all of the trust property. The court really held in effect that taxpayer failed to discharge his burden of proof, i. e., rebut the inference of donative intent by affirmative proof to support taxpayer's bald assertion that the donors had bargained for the cross transfers. In any event, the rationale of the *Heringer* case provides a reasonable and realistic test under circumstances comparable to those existing in subject cases, an objective standard (simultaneous receipt of economic benefits) as opposed to inquiry into the nebulous area of subjective motivation. Moreover, under the circumstances involved in these cases, this standard conforms with the statutory purpose that the gift tax is supplementary to the estate tax, i. e., persons are prevented from depleting their estates tax-free by making gifts during their lives.[6] In these cases, the transfers were of the full and entire title to the donated stock, whereas in *McLean*, the taxpayer and his wife transferred equal but substantial amounts of property to each other for the life of the grantee, with remainders over to their daughter, and taxpayer could quite possibly have avoided both gift and estate taxes on the property transferred by him, if mutuality of consideration had been established. Where

a transferor of all title to gift property has received an economic benefit, to that extent he has not depleted his estate. Irwin and Henry made reciprocal transfers, and each knew at the time of his transfer that the other was also making a transfer, and each knew that his interest was increased in the donee corporation by the concurrent transfers in proportion to the stock ownership of each. Justice indeed would have to be fanciful to ignore such realistic facts."

This discussion is not only pertinent to our decision in this case but it also bears on Michael Grace Executor, et al. v. United States, Ct.Cl., 393 F.2d 939, decided today.

NICHOLS, Judge, joins in the foregoing concurring opinion.

"6. Estate of Sanford v. Commissioner, supra, [308 U.S.] at 44 [60 S.Ct. 51]; Magill, The Federal Gift Tax, 40 Col.L. Rev. 773 (1940); Warren, Correlation of Gift and Estate Taxes, 55 Harv.L. Rev. 1 (1941)."