*In re* MARRIAGE OF KAREN LYNN WILSON, Petitioner-Appellee, and GARY DEAN WILSON, Respondent-Appellant.

Fifth District   No. 81—236

Opinion filed December 7, 1982.

Rex G. Burke, of Murphysboro, for appellant.

R. N. Gandy, of Peek and Gandy, of DuQuoin, for appellee.

JUSTICE JONES delivered the opinion of the court:

Respondent, Gary Dean Wilson, appeals from a portion of the judgment for dissolution of marriage entered on petition of his wife, Karen Lynn Wilson. Respondent contends that the trial court improperly determined the value of his partnership interest in a timber business as well as the value of certain real estate and that the property disposition based on these valuations was erroneous. Respondent also cites as error the court's award of maintenance and child support. We find reversible error in the court's property disposition and, accordingly, do not reach the maintenance and child support issues.

The parties were married in 1972 and have three children, one born in 1975 and twins born in 1977. During the marriage the parties lived in a mobile home located on petitioner's father's property. Upon their separation in June 1980, petitioner moved into her parents' home with the three children, and respondent moved into an apartment.

In May 1978 respondent began a timber business in equal partnership with his brother. He continued to work in the business, known as S & G Timber Products (S & G Timber), through the dates of the bifurcated dissolution hearings. Respondent's income from the S & G Timber partnership was $13,506 before taxes in 1979. He estimated his earnings to be $15,000 in 1980 although he had already earned $12,570 as of August 30, 1980. Respondent testified that most of his income is made by the fall of the year due to the seasonal nature of the timber business. Petitioner, who earned $4,311 in 1980 from vari-

ous odd jobs, also assisted in the partnership business prior to the separation by keeping books and records, ordering parts and paying bills.

In April 1979 respondent and his brother purchased 10 acres of land and a building for use in the S & G Timber partnership. The property was purchased for $20,000, and at the time of the hearing was subject to an outstanding mortgage of $14,000. The land and building were carried as assets on the partnership books where the land was valued at $20,000, and the building was valued at $207.

Petitioner testified that as of August 1980 the value of the tangible assets of the partnership including trucks, saws, skidders and other equipment was $40,000, but she did not know the amount of the partnership liabilities. Respondent testified that partnership assets were acquired by borrowing to finance those assets and that as of August 1980 the partnership had $47,000 in assets and $56,000 in liabilities. This did not include another truck purchased in December 1980. If he sold the business as of August 1980, respondent stated, the best he could do would be to break even.

The 1979 partnership tax return introduced by petitioner showed an income loss of $9,000 on gross receipts of $111,000, cost of goods sold of $39,000, payments to partners of $38,000 and deductions for operating expenses of $44,000. The return showed an end of the year inventory of $18,000, cash of $3,500, land of $20,000, and depreciated assets of $20,000 for a total of $61,500. The return further showed mortgages, notes, and bonds payable in one year or more of $65,000 and a loss in the partners' capital accounts of $3,650. A depreciation schedule showed assets used by the partnership which were purchased for $30,000 and allocated $10,000 in depreciation, $5,000 of which was current depreciation.

The partnership balance sheet for June 1980 showed assets of $63,000 which included $18,000 for inventory, $20,000 for the land and building, and $25,000 for depreciated assets. Long-term liabilities were listed as $46,000, with partnership earnings of $17,000. The August 1980 balance sheet showed assets of $41,000 and long-term liabilities of $46,000, leaving minus $5,098 in partnership earnings.

Halleck Reese, accountant for S & G Timber, testified that the decrease in book value from $63,000 in June to $41,000 in August was due to the fact that the business sold $18,000 worth of timber which had been carried on the books since the first of the year as inventory. The partners' withdrawals had exceeded actual profits and so included some of the funds generated by borrowing.

Reese stated that book value, which is cost less accumulated de-

preciation, does not disclose fair market value but is only a book transaction for income tax purposes. He was unable to give an opinion as to the fair market value of the partnership. Reese stated that a determination of fair market value would include a consideration of good will but that no value had been assigned to good will on the books of the partnership because the business was started by the partners themselves rather than being purchased as a going business.

In its judgment entered on April 28, 1981, the trial court found that both the partnership interest and the interest in 10 acres of land were marital property to be divided between the parties along with the couple's mobile home and other household and personal items. The court ordered that:

"1. the undivided one half interest in the 10 acres of land and the building thereon acquired in April 1979 by Gary Dean Wilson and Stanley W. Wilson shall be valued by an independent appraiser and twenty-five percent of the value of the entire tract shall be paid to Petitioner by Respondent in not more than 50 equal monthly installments, without interest if timely paid, commencing 30 days after the date hereof, or as the parties may agree in writing to be filed in this cause within such 30 day period;

2. the undivided one half interest of the Respondent in the business known as S & G Timber products is valued at $12,500.00 and Respondent shall pay 50 percent of that amount to Petitioner in equal monthly installments of not less than $100.00 per month commencing upon the termination of the amount payable as maintenance to Petitioner under paragraph IV hereof. Such payments shall be without interest if timely paid."

The court entered a supplemental order on the same date in which, "having received the respective evaluations of the real estate identified [in the judgment of dissolution]," the court found

"that the value of such real estate should be fixed at $26,000.00; that such value should be reduced by the amount owed on the note secured by a mortgage on the said real estate, which unpaid balance is fixed at $14,000.00 for purposes of this proceeding and that the value of the undivided net one half of such real estate, heretofore found by this Court to be marital property, is $6,000.00 and that Petitioner should .have and receive $3,000.00 in full for all Petitioner's right, title and interest in said real estate ***."

Respondent contends on appeal that the trial court's valuation

of his partnership interest at $12,500 is arbitrary and unsupported by the evidence presented. We agree. For a trial court to apportion marital assets under section 503 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1981, ch. 40, par. 503), the proper value of such assets must be established. (*In re Marriage of Donley* (1980), 83 Ill. App. 3d 367, 403 N.E.2d 1337.) Where the record lacks proper evidence of valuation, there is no basis upon which an appellate court can review the propriety of a trial court's apportionment of marital property. (*In re Marriage of Kundit* (1982), 107 Ill. App. 3d 310, 437 N.E.2d 777.) While petitioner in the instant case introduced into evidence extensive business records of the partnership, there was no testimony as to the value of the partnership from which the court could make its finding. When asked his opinion of the fair market value of the business, accountant Reese stated that he could not determine fair market value from the books of the partnership. In the absence of such testimony and in the absence of any indication as to how the court determined the value of respondent's business interest, we are unable to make a reasoned review of the value ascribed to the partnership interest for purposes of the property disposition. *Cf. In re Marriage of Leon* (1980), 80 Ill. App. 3d 383, 399 N.E.2d 1006, where the court held that the value of a sole proprietorship insurance business could not be ascertained solely on the basis of books and records of the business which were introduced into evidence; see also *In re Marriage of Boone* (1980), 86 Ill. App. 3d 250, 408 N.E.2d 96.

In determining the value of respondent's partnership interest for purposes of the division of marital property, consideration should be given to both the assets and liabilities of the partnership. (*In re Marriage of Leon*.) The court in *In re Marriage of Leon* rejected the valuation of the husband's insurance business based upon its past gross income and quoted with approval the California case of *In re Marriage of Lopez* (1974), 38 Cal. App. 3d 93, 113 Cal. Rptr. 58. The court there stated, in valuing the husband's partnership interest in a law firm, that consideration should be given to the existence and value of:

"(a) fixed assets, which we deem to include cash, furniture, equipment, supplies and law library; (b) other assets, including properly aged accounts receivable, costs advanced with due regard for their collectability; work in progress partially completed but not billed as a receivable, and work completed but not billed; (c) goodwill of the practitioner in his law business as a going concern; and (d) liabilities of the practitioner related to his business." 38 Cal. App. 3d 93, 110, 113 Cal. Rptr. 58, 69.

The *Lopez* court noted that the husband's capital account in the

law partnership should also be considered in determining the extent of the property to be divided between the parties. Due to the nature of a partnership, a partner not only has rights in partnership assets and profits (Ill. Rev. Stat. 1981, ch. 106½, pars. 24, 26) but also has the right to be repaid the amount of his contributions to the capital of the partnership (Ill. Rev. Stat. 1981, ch. 106½, par. 18). The partners' capital accounts have no bearing on the value of the partnership property and must be considered separately in determining the value of the partnership interest. *McDowell v. McDowell* (Colo. App. 1972), 499 P.2d 1208; see *Stern v. Stern* (1975), 66 N.J. 340, 331 A.2d 257.

Valuation of a partnership interest for purposes of the disposition of marital property, then, is generally approached in the same manner as valuation of a withdrawing partner's interest (see *Stern v. Stern; In re Marriage of Fonstein* (1976), 17 Cal. 3d 738, 552 P.2d 1169, 131 Cal. Rptr. 873; *McDowell v. McDowell*) or valuation of a partner's interest upon dissolution of the partnership in accordance with applicable statutory provisions (see Ill. Rev. Stat. 1981, ch. 106½, par. 40). (*Johnson v. Johnson* (Minn. 1979), 277 N.W.2d 208.) The court in *Johnson v. Johnson* described this valuation method as follows:

> "First, the difference between the fair market value of the partnership's assets, both real and personal, and its liabilities is determined. Next, the partners' capital accounts, which are debts of the partnership, *Petersen v. Petersen,* 284 Minn. 61, 169 N.W.2d 228 (1969), are subtracted from that figure. Out of the remainder, the partner's percentage interest is determined. The partner's capital account in full is an additional, separate asset to be included in the division of property. [Citation.]" (277 N.W.2d 208, 213.)

See also *In re Marriage of Brown* (1982), 110 Ill. App. 3d 782.

The record in the instant case is insufficient to permit an evaluation of respondent's business interest in accordance with this formula as further evidence must be taken to establish the value of partnership assets. The record contains no evidence concerning the fair market value of the tangible assets of the business which, as accountant Reese testified, may be more or less than book value. Further, while the partnership books show that the business has a negative net worth, the fact that it is a going business which generates income indicates that respondent's partnership interest is not without value to him. (*Cf. In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488, where the court held that shares of stock in a closely held corporation have an ascertainable value due to the owner's right to manage and share in future profits of the business; see also *In re*

*Marriage of White* (1981), 98 Ill. App. 3d 380, 424 N.E.2d 421.) Thus, the existence and value of good will as an asset of the partnership should also be considered. (See *In re Marriage of Lopez*.) Because of the need for additional evidence on these points, this cause must be remanded for a new trial with directions that evidence be received to enable the trial court to ascertain the value of respondent's partnership interest. See *In re Marriage of White; In re Marriage of Leon.*

■ Attention must also be given to respondent's contention that the trial court valued the same property twice by treating his interest in the 10 acres of real estate as a separate marital asset when it was part of the partnership assets included in valuing his partnership interest. As we have indicated, the record does not disclose the basis for the trial court's determination of the value of respondent's partnership interest, and it is unclear whether the real estate was actually considered by the trial court as a partnership asset. In any event, there was sufficient evidence introduced at trial to support respondent's contention that the real estate purchased by him and his brother belonged to the partnership and did not constitute a separate marital asset. Both petitioner and respondent testified that the 10 acres was purchased by the partnership and constituted a business asset. Respondent's testimony that the $20,000 purchase price was carried on the books of the partnership as the value of the real estate is borne out by the business records introduced by petitioner. "Where real estate is bought with partnership funds for partnership purposes, and is applied to partnership uses or entered or carried on the account of the firm as a partnership asset, it is deemed to be firm property." (*Korziuk v. Korziuk* (1958), 13 Ill. 2d 238, 242, 148 N.E.2d 727, 729; *cf. Rizzo v. Rizzo* (1954), 3 Ill. 2d 291, 120 N.E.2d 546, where property purchased for the business and paid for with business funds and contributions of firm members whose only source of income was partnership business was deemed to be partnership property.) In proceeding on remand, then, the trial court is directed to treat the real estate as a partnership asset to be included in the valuation of respondent's partnership interest. As the fair market value of all partnership assets is to be considered in determining the value of the partnership interest, the parties are not bound by the valuation of the land shown on the partnership balance sheet.

Because the division of marital property is among those factors which must be considered in determining the amount of maintenance (Ill. Rev. Stat. 1981, ch. 40,par. 504(b)(1)) and child support (Ill. Rev. Stat. 1981, ch. 40, par. 505(a)(2)), courts have deemed it desirable to remand to the trial court all interrelated property and support issues

once it has been determined that the property division was improper. (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 426 N.E.2d 1087; *In re Marriage of Olsher*.) We accordingly remand the entire cause for a new trial so that the maintenance and child support awards can be determined in view of the resources available to the wife after an equitable division of marital property is effected. *In re Marriage of White* (1981), 98 Ill. App. 3d 380.

Reversed and remanded.

HARRISON and KASSERMAN, JJ., concur.