**John H. PEDDYCORD, Appellant
(Respondent Below)**

**v.**

**Carole M. PEDDYCORD, Appellee
(Petitioner Below)**

**No. 3–1084A294.**

Court of Appeals of Indiana,
Third District.

June 17, 1985.

Robert J. Palmer, May, Oberfell, Helling & Lorber, South Bend, for appellant.

Judith N. Stimson, Buck, Berry, Landau, Breunig & Quinn, A Professional Ass'n, Indianapolis, for appellee.

HOFFMAN, Judge.

The trial court rendered its findings, conclusion, and judgment dissolving the marriage and distributing the marital assets of appellant John Peddycord and appellee Carole Peddycord. John appeals from the judgment and raises the following issue for review: whether the trial court erred in valuing John's partnership interest in his law firm at the amount his widow or estate would receive upon his death.

In its findings of fact the trial court stated:

"38. That in consideration of all factors presented, the most logical and meaningful formula for establishing a value upon the interest that the Respondent retains in his law firm is to utilize the computation of benefits that the Petitioner would receive in the event the marriage was continuing and the Respondent would have died on the date of separation, inasmuch as the marriage of the parties has in fact died and is being dissolved."

The court then found:

"40. That the total value of the Respondent's interest in his law partnership as of the date of separation would be the sum of his capital account in the amount of $20,673.73, together with that sum that would be paid in the event of his death in the amount of $53,630.89, totaling $74,304.62, less the liability owed to the partnership by the Respondent in the amount of $16,908.02, for a net valuation of the Respondent's interest of $57,-396.60."

John does not dispute that his capital account is a marital asset to be divided by the court. However, he does contend that the court erred in finding the additional $53,630.89 death benefit to be a marital asset. He argues the court erred in valuing his partnership interest at the amount of the payment to his widow upon his death.

The valuation of an interest in a law partnership for the purposes of division of property in a divorce proceeding is a new issue to this jurisdiction. While decisions from other jurisdictions on this issue are not binding upon this Court, a review of those decisions is nevertheless insightful.

■ There is no dispute that a spouse's interest in a professional partnership is a marital asset subject to division in a dissolution. However, placing a precise or even an approximately accurate value on such a partnership interest, especially when the partner whose interest in question continues as a member of the firm, is not easy.

Universally, when a partnership agreement exists, courts have attempted to value the continuing partner's interest by reviewing that agreement. *Weaver v. Weaver* (1985), 72 N.C.App. 409, 324 S.E.2d 915; *Holbrook v. Holbrook* (1981), 103 Wis.2d 327, 309 N.W.2d 343; *In re Marriage of Fonstein* (1976), 53 Cal.App.3d 846, 126 Cal.Rptr. 264; *Stern v. Stern* (1975), 66 N.J. 340, 331 A.2d 257. In the cases, a split arises as to whether the interest should be valued as if the partner were withdrawing from the firm on the date of separation or had died on the date of separation. The partnership agreement in the present case provides different formulas based upon the reason for the partner's exit from the firm.

The cornerstone of the argument for using the death benefit approach is *Stern, supra.* In that case the Supreme Court of New Jersey acknowledged that the partnership agreement in question therein provided four distinct payment plans applicable to a partner who withdraws, becomes disabled, dies, or retires. The court stated that "probably the most accurate and certainly the most useful for present purposes is the formula for the calculation and payment of a partner's interest to his personal representative upon death." *Id.* at 346, 331 A.2d at 260. Unfortunately, the court failed to disclose why it chose this method as the most accurate and most useful.

There are several jurisdictions which have adopted the withdrawing partner view. *Weaver, supra; Lewis v. Lewis* (1983), 113 Wis.2d 172, 336 N.W.2d 171; *In re Marriage of Wilson* (1982), 110 Ill. App.3d 809, 66 Ill.Dec. 508, 443 N.E.2d 31;

*Holbrook, supra; Johnson v. Johnson* (1979), Minn., 277 N.W.2d 208; *Fonstein, supra.* While these cases are more numerous than those adopting the death benefit view, they likewise fail to enlighten the reader as to why this method is preferred.

This Court recognizes the difference between a partnership agreement and a life insurance policy, but the similarities between the payout provisions require our attention. The partnership agreement here provides that when an attorney leaves the firm for any reason, he is entitled to receive the amount in his capital account. If the partner leaves due to death, disability, or mandatory retirement, he is entitled to an additional sum based upon a percentage of partnership profits distributed over the previous three years. Should he withdraw from the firm, he will receive a lesser percentage of the distributed profits.

Similarly, a life insurance policy pays a certain amount upon the insured's death and pays a lesser amount, the cash value, if the owner cashes in the policy. Death, disability, or mandatory retirement is something which a law partner or an insured has no control over, whereas voluntary withdrawal or the cashing in of a policy are within the sole control of the partner or policy owner.

An insurance policy's value, for the purposes of a marriage dissolution, is its cash value. *Wisner v. Wisner* (1981), 129 Ariz. 333, 631 P.2d 115. While it is not contemplated by the courts that such policies will be cashed in, that is the only value which can be assigned. Neither can it be contemplated that a partner in a law firm will withdraw. However, as life insurance policies are treated as if the owner cashed them in on the date of separation, it is clear to this Court that a law partner's interest should be valued as if he had withdrawn from the partnership on the date of the separation.

The trial court valued John's interest in his partnership as if he had died on the date of separation. As the trial court used the improper measure, it must now revalue that interest. This Court is mindful that there are two different formulas for determining the amount of payment to a withdrawing partner, whether he withdraws and competes or withdraws and does not compete, and the trial court's use of either method would not be an abuse of discretion unless there is direct evidence to the contrary.

This cause is reversed and the parties are entitled to a new hearing on the property distribution.

Reversed.

STATON, P.J., concurs;

GARRARD, J., concurs in result.