WILLIAM E. BORROR AND ENID P. BORROR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Borror v. Commissioner
Docket No. 34642-85
United States Tax Court
T.C. Memo 1989-579; 1989 Tax Ct. Memo LEXIS 565; 58 T.C.M. (CCH) 499; T.C.M. (RIA) 89579; October 26, 1989
William E. Borror, pro se. Brett J. Miller, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in petitioners' Federal income taxes as follows: Year
Deficiency
1982
$ 6,004.50
1983
6,000.00
The primary issue for decision is whether monthly payments made by petitioner William E. Borror (hereinafter "William") to his former wife Gertrude B. Walker (hereinafter " Gertrude") constitute deductible alimony under section 215[1] for taxable years 1982 and 1983. In the event this issue is determined adversely to petitioners, we must decide whether estoppel bars respondent from denying the deductions for the monthly payments. [2]
*567 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Fort Wayne, Indiana, on the date of filing the petition in this case. For each of the years in issue, petitioners William and Enid P. Borror filed a joint Federal income tax return with the Internal Revenue Service Center at Memphis, Tennessee. William and Gertrude were married to each other on June 18, 1954. On January 12, 1979, they were divorced by a dissolution decree of the Circuit Court of Whitley County, Indiana. William and Gertrude parented three children during their marriage, one of whom had not attained majority by the date of the dissolution decree. Except for certain personal property given to Gertrude prior to their marriage, all of the property owned by William and Gertrude at the time of their divorce was acquired during the marriage. William earned essentially all of the income during the marriage. Gertrude filed for divorce on October 18, 1977. Prior to the filing, Gertrude withdrew and sequestered monies from the couple's checking and savings accounts. Attempted *568 reconciliations in late 1977 and early 1978 failed. During this time period, Gertrude removed three rooms of furniture from an apartment occupied by William, which she purportedly gave to three poor families. In May of 1978, Gertrude again filed for dissolution of marriage. In that filing, Gertrude requested personal support pendente lite of $ 1,000 per month and child support in the monthly amount of $ 250. In May of 1978, William commenced payments pendente lite in the amount requested and William continued to make the payments each month until the date of the dissolution decree. Gertrude's October 1977, and May 1978, filings for divorce were dismissed for reasons not in the record of the instant case. William and Gertrude entered into a "Property Settlement Agreement" (hereinafter the "Agreement") in anticipation of divorce. The Agreement was dated August 25, 1978. William signed the Agreement on August 25, 1978; Gertrude signed the Agreement on January 12, 1979. Gertrude refiled for divorce on August 28, 1978, and a decree dissolving the marriage was entered by the Circuit Court of Whitley County on January 12, 1979. The dissolution decree incorporated the terms of the *569 Agreement. The Agreement provided, inter alia, for "the settlement of the respective rights of [William] and [Gertrude] to all property, both real and personal, now in their name and/or possession, * * * the consideration to be paid by [William] to [Gertrude] in complete discharge of [William's] legal obligation to [Gertrude] arising out of the marital relationship * * *." Gertrude received pursuant to the Agreement, in pertinent part: D. PERSONAL PROPERTY SETTLEMENT FOR WIFE
* * * One-half of all the parties' household goods [with exception of certain personal property set over to each respective spouse] * * *, $ 11,500.00 in cash representing the value of the 1973 Mercedes automobile to be retained by [William], * * * $ 2,000.00 in cash representing [Gertrude's] share of the value of the 1976 Jeep to be retained by [William], * * * fifty percent of the net proceeds of * * * [the] sale [of Gertrude's 1977 Mercedes automobile] over and above $ 11,500.00 with the balance of any net proceeds from the sale * * * to be set over to [William] * * *. In addition to the above, [Gertrude] is to receive $ 20,000.00 in cash and thereafter, $ 1,000.00 *570 per month for the succeeding 180 months for a total payment of $ 200,000.00 which payments, in addition to the money and property hereinabove set over to [Gertrude] will be in full settlement of any and all interest [Gertrude] has in any of the marital property of the parties. The above obligation to pay said $ 200,000.00 shall not be dischargeable in bankruptcy * * * and shall be an obligation of [William] and his estate and heirs in the event of death before payment in full. It is further agreed that any and all unaccrued and unpaid installments shall terminate upon death of [Gertrude]. * * * [William] shall, by Will, devise and bequeath to his children living at the time of his death, equally, share and share alike, an amount at least equal to the unpaid alimony in the event [Gertrude] predeceases [William]. * * * [William] agrees to convey a one (1) acre lake frontage lot from the Whitley County property to Sandra Ellen Borror, * * * William received under the Agreement all other items of personal property, tangible and intangible, not specifically set over to Gertrude in the Agreement. William also received all real property owned by the parties located *571 in Whitley and Steuben Counties. William agreed that he would assume and pay all outstanding obligations incurred by the parties as of the date of the Agreement, as listed with approximate principal amounts below: Creditor
Location
Type
Amount
Lincoln National Bank
Fort Wayne, Ind.
Real Estate Mortgage
$ 182,187.20
Lincoln National Bank
Fort Wayne, Ind.
Guarantor on Daughter's
9,000.00
Note
Anthony Wayne Bank
Fort Wayne, Ind.
Land Loan
57,871.27
Anthony Wayne Bank
Fort Wayne, Ind.
Loan for Estimated
10,000.00
Tax Payments
Lincoln National Bank
Fort Wayne, Ind.
New Office Construction
99,300.00
Loan
U.S. Government Washington, D.C.
1978 Estimated Tax 25,000.00
Payments
State of Indiana
Indianapolis, Ind.
1978 State Estimated
3,000.00
Tax Payments
In negotiations which led to the original draft of the Agreement, Gertrude requested to receive monthly payments of $ 1,000 for the remainder of her life. Gertrude reduced her request to a 20-year period of monthly payments. Gertrude did not have significant income-producing skills at the time of her divorce from William. Gertrude asserted *572 that she needed the monthly payments so that she could attend college, obtain a degree, and become self-supporting. Gertrude declared that she would relinquish her right to the monthly payments when she became self-supporting. William and Gertrude compromised at 15 years of monthly payments with an additional $ 20,000 to be paid upon divorce. During a September 1978, meeting, William advised Gertrude and Jerrald A. Crowell (hereinafter "Crowell"), Gertrude's attorney, that he would agree to the monthly payments only if they were deductible to him. Crowell witnessed William state, in Gertrude's presence, that William could not make the payments unless they were tax deductible to him and taxable to Gertrude. Crowell understood that the monthly payments were for Gertrude's support, not property settlement. Gertrude told Crowell, prior to her execution of the Agreement, that she understood that the monthly payments would be taxable to her as income. Crowell specifically reviewed the monthly payment clause of the Agreement to be certain it accorded with what the parties wanted to accomplish at the time. Crowell believed that the language of the clause was sufficient to convey the *573 fact that the monthly payments were for support. Crowell did not discuss with Gertrude the possibility of receiving interest on the monthly payments because interest is not payable on maintenance under Indiana law. The original draft of the Agreement stated that the monthly payments would terminate upon Gertrude's death or remarriage. Gertrude requested that the language "or remarriage" be removed from the draft of the Agreement, tearfully stating that it insulted her. Gertrude stated at the time that William had poisoned her against all men. William granted her request and removed the language. Gertrude remarried within 6 weeks of the dissolution decree. During the time period relevant in this case, William was a partner in the Fort Wayne, Indiana, law firm then known as Hunt, Suedhoff, Borror, Eilbacher and Lee. William joined the firm in 1962 and accepted partnership in 1968. William practiced almost exclusively insurance defense litigation during his career with the firm. The law partnership borrowed $ 99,300 on July 19, 1978, to make capital improvements to the firm's office space. William's law partnership agreement stated, in pertinent part: In the event that *574 a partner withdraws or retires from the firm prior to attaining age sixty-five (65) years or prior to twenty-five (25) years of service as a partner, and provided he does not engage in litigation or try law-suits thereafter within sixty (60) miles of the city limits of Fort Wayne, Indiana, for any client set forth in Exhibit A, attached hereto and made a part hereof, such withdrawing partner shall receive from the aforesaid bank accounts, cash, checks, subsequent monies received and reimbursed expenses, the same share he would have received had he died * * *. * * * In the event of the death of any of the partners, * * * all of his interests in the assets and business of said partnership shall immediately cease and terminate and, in lieu thereof, the estate or personal representative of such deceased partner shall receive his percentage share in existence as of the date of death of such partner of all bank monies or amounts thereafter received for services by the partnership rendered prior to his death, and for expenses and disbursements made by the partnership prior to the death of any such partner, less any accrued and contingent liabilities * * *. * * * In the event that *575 any partner shall retire or voluntarily withdraw * * * [and] continues or commences again to practice law within sixty (60) miles of the city limits of Fort Wayne, Indiana and is employed directly or indirectly, individually, or as a member or employee of any law partnership, or otherwise, by any of the clients, insurance companies, and/or employees or representatives thereof listed in Exhibit A, then for a period of four (4) years from the date of such withdrawal, he shall pay over to the remaining partners, except partners who had previously withdrawn, twenty-five percent (25%) of all payments received for subsequent services rendered for such client, insurance company and/or employee or representative during said four (4) years * * *. Exhibit A to the law partnership agreement lists insurance defense clientele who employed the law partnership. William and Gertrude purchased certain municipal bonds during their marriage which they retained at the time of their separation. The value of the four bonds was approximately $ 18,000 on August 25, 1978. William gave Gertrude a check in the amount of $ 18,000 on September 28, 1978, in exchange for the municipal bonds. William *576 participated in a Keogh Retirement Plan. William's account balance exceeded $ 30,000 in August of 1978. William maintained a checking account in Lincoln National Bank on August 25, 1978, of $ 2,843.70, a savings account at Home Loan & Savings on August 17, 1978, of $ 4,284.13, and at Standard Federal on August 17, 1978, of $ 8.80. William did not maintain a checking or savings account with Anthony Wayne Bank during calendar year 1978 or 1979. In 1976, William, Jack C. Halter (hereinafter "Halter"), and Otto Bonahoom borrowed jointly from Anthony Wayne Bank to purchase land and build a lake in Whitley County, Indiana. Otto Bonahoom withdrew from the venture leaving William and Halter as owners of the property. Halter paid his portion of the loan in full by August 25, 1978, leaving the balance to be paid by William. William and Gertrude built a residence on the lake in Whitley County and moved in on July 7, 1977. The house is a one-and-one-half-story colonial style residence with 4,992 square feet of living area excluding a lower level basement, three-car garage, closed-in porch, greenhouse, and enclosed pool area. Costing approximately $ 280,000 to build, the residence is *577 one of the most extensive single family residential properties in Whitley County. William employed Michael W. Roach (hereinafter "Roach") in the spring of 1978 to render an opinion as to the value of the Whitley County residence and approximately 53 acres. In 1978, Roach opined that the fair market value of the property in the summer of 1978 did not exceed $ 200,000. On April 4, 1978, William and Gertrude listed the Whitley County property for sale for $ 285,000. Roach attempted to market the property, but met with no success. William and Gertrude later reduced the listing price to $ 265,000, an amount which would cover solely the existing debt on the property and expenses of sale. After a total of nine months, William and Gertrude received no offers to purchase the property. In April 1979, Roach opined that the property's fair market value in 1978 was $ 190,000. William approached James E. Bradley (hereinafter "Bradley") in the spring of 1980 to list and sell the Whitley County property. Bradley opined that the fair market value of the property in August of 1978 did not exceed $ 210,000. Bradley marketed the property by enlisting the services of an auctioneer. The auctioneer *578 employed illegitimate bidders to aide in the sale of the property. A legitimate bidder offered $ 400,000 for the property, but rescinded his bid upon learning that William owned only one-half of the lake. The property sold for $ 400,000 in March 1981, after Bradley convinced Halter to sell his portion of the property to the legitimate bidder. At respondent's request, Verne V. Mitchell, III (hereinafter "Mitchell") inspected the Whitley County residence on March 27, 1987. Mitchell estimated that the fair market value of the property as of August 24, 1978, was $ 275,000. Following William and Gertrude's divorce and during the years in issue, William made monthly payments of $ 1,000 to Gertrude pursuant to the Agreement. William claimed a deduction of $ 12,000 in each of the years 1981, 1982, and 1983 on the basis that the monthly payments were for support. Respondent previously examined petitioners' 1981 Federal income tax return and reviewed the divorce decree. Respondent accepted the return as filed. OPINION We must determine whether the monthly payments made by petitioner to Gertrude constitute deductible alimony support payments or nonductible payments in exchange for *579 property or rights to property. Our decision as to this issue will determine if we must address the estoppel issue raised by petitioner. The deductibility of amounts paid under section 215 is determined by reference to section 71. [3]Section 215(a) provides in relevant part: SEC. 215(a). General Rule. --In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * * Therefore, deduction by the payor under section 215 is predicated upon the inclusion in gross income by the recipient spouse under section 71. Section 71(a)(1) sets forth the requirements for inclusion in gross income *580 of payments received pursuant to a decree of divorce or separate maintenance. [4] In sum, qualification for inclusion of payments under section 71(a)(1) requires: (1) that the payments are periodic; (2) that the payments arise because of a marital or family relationship; (3) that the payments are made pursuant to a decree of divorce or separate maintenance or to a written instrument incident thereto; and (4) that the payor is under a legal obligation to make the payments. In the instant case, the requirements that payments be made pursuant to a decree of divorce and that the payor be under a legal obligation to make the payments *581 are not in issue. The dissolution decree of the Whitley Circuit Court, which incorporated the property settlement agreement, satisfies these requirements. [5] Nor is any problem presented regarding the classification of the payments as periodic. Under the general rules of section 71(c)(1), installment payments discharging a principal sum obligation, as opposed to continuing payments of an indefinite duration, are not treated as periodic payments. See also sec. 1.71-1(d)(1), Income Tax Regs.Section 71(c)(2) provides a statutory exception to the general rule of section 71(c)(1). Subject to a percentage limitation, [6]section 71(c)(2) permits installment payments of a principal sum obligation to be treated as periodic payments if the period for payment extends more than 10 years beyond the date of the decree or agreement. The payments required by William under the Agreement are required for 15 years beyond the date of the dissolution decree. Accordingly, the monthly payments are periodic under section 71(c)(2). All other requirements of section 71(a)(1) having been *582 met, the decisive question in determining deductibility is whether the payments were incurred by William for Gertrude's support "because of the marital or family relationship." The statutory phrase "payments [imposed] * * * because of the marital *583 or family relationship" requires that the payments be in the nature of support rather than property settlement. Beard v. Commissioner, 77 T.C. 1275, 1283 (1981); Martin v. Commissioner, 73 T.C. 255 (1979); secs. 1.71-1(b)(4) and 1.71-1(d)(3)(i)(b), Income Tax Regs. Payments that are part of a property settlement are capital in nature and, therefore, are not subject to the provisions of section 71. Gammill v. Commissioner, 73 T.C. 921 (1980), affd. 710 F.2d 607 (10th Cir. 1982). See also Watkins v. Commissioner, 53 T.C. 349 (1969); Thompson v. Commissioner, 50 T.C. 522 (1968). Accordingly, payments are deductible by the payor only where they are in the nature of support rather than in settlement of some property interest. See sec. 1.71-1(b)(4) Income Tax Regs. Respondent contends that the payments in the instant case were not for Gertrude's support, but, instead, represented part of a property settlement. In evaluating whether a particular payment constitutes support or property settlement, the labels assigned to the payments are not determinative. *584 Gammill v. Commissioner, supra; Thompson v. Commissioner, supra; Hesse v. Commissioner, 60 T.C. 685, 691 (1974), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975), cert. denied 423 U.S. 834 (1975); Bardwell v. Commissioner, 38 T.C. 84 (1962), affd. 318 F.2d 786 (10th Cir. 1963). Rather, examination of surrounding facts and circumstances is required. Gammill v. Commissioner, supra; Lambros v. Commissioner, 459 F.2d 69 (6th Cir. 1972), affg. a Memorandum Opinion of this Court. The factors this Court looks to are listed in Beard v. Commissioner, supra.On the basis of the record before us, we conclude that the monthly payments made by William to Gertrude are in the nature of support. In reaching this conclusion, we find persuasive the facts that Gertrude's needs were taken into consideration in determining the amount of the payments, that the parties intended the monthly payments to be for Gertrude's support, and that Gertrude did not surrender property in exchange for the monthly payments. *585 See Porter v. Commissioner, 388 F.2d 670 (6th Cir. 1968), affg. per curiam a Memorandum Opinion of this Court; Mann v. Commissioner, 74 T.C. 1249 (1980); cf. McCombs v. Commissioner, 397 F.2d 4, 7 (10th Cir. 1968), affg. a Memorandum Opinion of this Court. At the outset we note that much of William and Gertrude's testimony conflicted as to relevant facts in this case. We also note that Gertrude's testimony conflicted with her own attorney's testimony. We closely observed Gertrude and found her to be devious. We find her testimony to be self-serving, equivocal, and evasive. Gertrude's support requirements were taken into consideration by the parties in determining the amount of the monthly payments. In May of 1978, William commenced payments pendente lite of $ 1,000 per month for Gertrude's personal support. These payments are evidence of the parties' estimate of Gertrude's needs for support. Bishop v. Commissioner, 55 T.C. 720, 728 (1971); Nathan v. Commissioner, 19 T.C. 865, 871-872 (1953); Hogg v. Commissioner, 13 T.C. 361, 367 (1949). In the negotiations which *586 led to the Agreement, the amount Gertrude was to receive each month was never at issue. The negotiations merely focused on how long the monthly payments would continue. Gertrude initially requested to receive monthly payments of $ 1,000 for the remainder of her life. She reduced her request to a twenty-year period of the monthly payments. William and Gertrude settled on a payment period of 15 years. The period settled upon appears to be based on the length of time Gertrude would need to become self-supporting. Gertrude did not have significant income-producing skills at the time of her divorce from William. Gertrude asserted that she needed the payments so that she could obtain a college degree and become self-supporting. Gertrude declared that she would relinquish her right to the monthly payments when she became self-supporting. William and Gertrude intended the monthly payments to be for Gertrude's support. Phinney v. Mauk, 411 F.2d 1196 (5th Cir. 1969), revg. 280 F. Supp. 167 (S.D. Tex. 1967); Porter v. Commissioner, supra; Wright v. Commissioner, 62 T.C. 377 (1974), affd. 543 F.2d 593 (7th Cir. 1976); *587 Warnack v. Commissioner, 71 T.C. 541 (1979). Crowell, [7] Gertrude's attorney, understood that the monthly payments were for support. Crowell noted that William stated that he could not afford to make the payments unless they were so treated. Further, Gertrude told Crowell prior to her execution of the Agreement that she understood that the monthly payments would be taxable to her as income. Crowell specifically reviewed the monthly payment clause of the Agreement to be certain it accorded with what the parties wanted to accomplish at the time. Crowell believed that the language of the clause was sufficient to convey the fact that the payments were for support, not property settlement. Crowell did not discuss with Gertrude the possibility of interest on the monthly payments because interest is not payable on maintenance under Indiana law. We find Crowell's testimony to be absolutely credible and a clear reflection of the events he observed. Gertrude did not surrender property *588 in exchange for the monthly payments. See Mann v. Commissionersupra; Schottenstein v. Commissioner, 75 T.C. 451 (1980). Respondent argues that Gertrude surrendered the net value of the Whitley County residence, William's partnership interest, four municipal bonds, and William's Keogh plan in exchange for the monthly payments. No net value existed in the Whitley County property which Gertrude could have exchanged for the monthly payments. William employed Roach in the spring of 1978 to render an opinion regarding the value of the Whitley County property. Roach has been active in the real estate business since 1967. He was the president, at the time of trial in this Court, of a leading real estate firm in Fort Wayne, Indiana. Roach also appraises property for the Federal government. After analyzing the residence and 53 acres, Roach opined in 1978 that the fair market value of the property did not exceed $ 200,000. Roach found economic obsolescence to be a strong factor in limiting the value of the residence. Economic obsolescence refers to the loss of value from causes outside of the property itself. Roach noted that the property was *589 located 25 miles from Fort Wayne in a remote, rural location. Roach observed that the residence is not in the proximity of executive employment or the amenities that potential buyers of this residence would typically seek, such as golf, tennis, and other typical social and recreational functions. Roach also observed that the residence is not in conformity with its neighborhood. The home is in a prestigious price range, but is not in the proximity of other prestigious homes. Roach found functional obsolescence also to be a factor in limiting the value of the residence. The home has approximately 5,000 square feet of living area, but has only three bedrooms. Roach determined that certain approaches to residential value were inapplicable due to the home's location. The market approach to value, which is based upon a comparison of homes sold, did not apply because Roach found no comparable properties sold in the area surrounding Fort Wayne. In the two years prior to the listing of the residence, not one home of similar or greater value was sold in Whitley County. Less than one-tenth of one percent of the homes sold within a 40-mile radius of Fort Wayne sold for over $ 200,000 *590 in 1978. The most important factor in these sales, Roach opined, was location. Roach dismissed the cost approach to value in this case by commenting that cost does not necessarily equal value. William and Gertrude signed a listing agreement on April 4, 1978, to sell their residence for $ 285,000. Roach attempted to market the property with the direct mailing of brochures to professionals, but met with no success. William and Gertrude later reduced the listing price to $ 265,000, an amount which would cover solely the existing debt on the property and the expenses of the sale. After listing the property for a total of nine months, William and Gertrude received no offers to purchase the property. William approached Bradley in the spring of 1980 to list and sell the Whitley County residence. Bradley has been active in the real estate business since 1973. At the time of trial in this Court, Bradley was the president of Bradley Realty, Inc., the largest producer of residential real estate sales of any Century 21 realty office in Fort Wayne, Indiana. Bradley concluded that the fair market value of the property in August of 1978 did not exceed $ 210,000. Bradley found no comparables *591 upon which to base the market approach to value. Bradley's opinion was based heavily on the fact that William owned only one-half of the private lake. Bradley opined that the value of the property would greatly increase if it were sold in conjunction with the remaining portion of the lake. Bradley marketed the property by enlisting the services of an auctioneer. The auctioneer employed illegitimate bidders to aide in the sale of the property. Bradley and William were not aware of the illegitimate bidders at the time of the auction. A legitimate bidder offered $ 400,000 for the property, but rescinded his bid upon learning that William owned only one-half of the lake. William sold the residence and 53 acres to the legitimate bidder for $ 400,000 in March 1981, after Bradley convinced Halter to sell his portion of the property to the legitimate bidder. At respondent's request, Mitchell inspected the Whitley County residence on March 27, 1987. Mitchell was the president of Verne V. Mitchell & Associates, Inc. at the time of trial. Mitchell estimated that the fair market value of the property as of August 24, 1978, was $ 275,000. Mitchell based his opinion on comparables he found *592 to exist. Both Roach and Bradley disagreed with Mitchell's comparables, noting that none of Mitchell's comparables were located in Whitley County. Some of Mitchell's comparables were located in Allen County, Indiana. Allen County is one of the most popular and elite counties in the proximity of Fort Wayne. Given this fact, the fact that Mitchell had never sold residential property in Whitley County, and the fact that Mitchell's appraisal was made with the knowledge of the sale after the relevant valuation period, we find the Roach and Bradley appraisals to more closely approximate the fair market value of the Whitley County residence in 1978. See Estate of Spruill v. Commissioner, 88 T.C. 1197, 1233 (1987); accord Estate of Gilford v. Commissioner, 88 T.C. 38, 52-55 (1987). Pursuant to the Agreement, William assumed full responsibility for the liabilities on the Whitley County residence. On August 25, 1978, the mortgage balance on the 53 acres was $ 57,871.27 and the mortgage balance on the house was $ 182,187.20. No net value existed in this property during the relevant time period in this case. William testified, and we find credible, *593 that Gertrude offered to sign the property over to William in exchange for William holding her harmless on the property's mortgages. William was a partner in the Fort Wayne, Indiana, law firm known as Hunt, Suedhoff, Borror, Eilbacher and Lee during the time period relevant in this case. The partnership agreement stated that if a partner withdrew from the firm and engaged in litigation within 60 miles of the City of Fort Wayne for certain listed clients, the partner would forfeit his entire interest in the law firm. If a partner withdrew and chose not to so compete, the partner would be entitled to his percentage share of partnership assets less the total of all accrued and contingent liabilities of the partnership. Under Indiana law, the proper method to value an attorney's interest in a partnership, in the event of a dissolution of marriage, is to treat the law partner's interest as if the attorney withdrew from the partnership on the date of the marital separation. Peddycord v. Peddycord, 479 N.E. 2d 615, 617 (Ind. App. 1985). The court may value the partnership interest as if the partner withdrew and competed or did not compete, provided that there is *594 no direct evidence that the court's choice is an abuse of discretion. Peddycord v. Peddycord, 479 N.E. 2d at 617. We find that William's partnership interest is to be valued as if he voluntarily withdrew and competed with the firm as described in the partnership agreement. No evidence in the record suggests that this method of valuation is inappropriate. Accordingly, we find that William's partnership interest retained no value which Gertrude could have surrendered in exchange for the monthly payments. We find credible and accept William's testimony as a fact that Gertrude agreed that William's partnership interest was essentially worthless. Gertrude surrendered her rights in the municipal bonds and William's retirement plan in exchange for property other than the monthly payments. The value of the four bonds was approximately $ 18,000 on August 25, 1978. William retained the bonds pursuant to the Agreement. Gertrude stated at trial that she received the monthly payments in exchange for these bonds. Based on William's testimony, we find that Gertrude received a check for $ 18,000 from William on September 28, 1978, in exchange for the bonds. William's Keogh *595 plan had a balance in excess of approximately $ 30,000 in August of 1978. William and Gertrude agreed that William would retain the plan's balance. In exchange, William agreed not to require Gertrude to account for monies she withdrew from the couple's checking and savings accounts in October of 1977 and three rooms of furniture she removed from his apartment. We have analyzed the Agreement and have considered the value of the property owned by William and Gertrude. We find that Gertrude surrendered no significant property, tangible or intangible, in exchange for the monthly payments. William and Gertrude divided their property equally. The monthly payments were provided to Gertrude without regard to the property division. The monthly payments are not secured. This fact also weighs in favor of the monthly payments being in the nature of support. See Beard v. Commissioner, 77 T.C. 1275 (1981). Respondent contends that the monthly payments do not terminate upon Gertrude's remarriage or death and asserts that this fact indicates the payments are in the nature of a property settlement. We find these issues to be nondeterminative in this case. We observe that *596 a draft of the Agreement provided for the termination of payments upon remarriage. Gertrude convinced William that the language disparaged her and persuaded him to remove the language from the Agreement. William agreed, not being aware of Gertrude's impending marriage. We also observe that the Agreement contradicts itself as to whether Gertrude's rights to the monthly payments end upon her death. The Agreement states that the payments end on Gertrude's death, yet provides that William must bequeath the remainder of payments to the children of their marriage. Respondent argues on brief that the payments do not end on Gertrude's death, yet admits in his answer that the monthly payments end on death. Respondent's position in this respect is equivocal and without merit. We have considered respondent's other arguments and find them unpersuasive. Having found that the payments were for support, all requirements necessary for inclusion under section 71(a) are met. Accordingly, William is entitled under section 215(a) to deduct all payments made by him to Gertrude pursuant to the Agreement. As the payments are deductible to William under section 215(a), we need not consider his claim *597 that respondent is estopped from denying the deductions for the monthly payments. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue and rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Petitioners failed to include in their petition clear and concise assignments of error as to certain determinations by respondent. Accordingly, we deem petitioners to have conceded the following issues, pursuant to Rule 34(b)(4): failure to include interest income of $ 66 into gross income, improper deduction for rental property depreciation of $ 1,775, and improper documentation of a deduction for professional dues of $ 66.↩
3. Sec. 71↩, as amended by the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, applies to divorce and separation instruments executed after December 31, 1984. We note that the instrument here in issue was executed prior to that date.
4. Sec. 71(a)↩ provided: "If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation."
5. Indiana law provides that parties to a divorce may agree in writing for the maintenance of either of them, the disposition of any property, and custody and support of their children. Ind. Code Ann. sec. 31-1-11.5-10(a)(Burns 1973). The terms of the agreement, if approved by the court considering the dissolution, shall be incorporated into the court's decree or the court may make provisions of its own. Ind. Code Ann. sec. 31-1-11.5-10↩(b) (Burns 1973). In this case, the agreement was incorporated into the divorce decree. 6. The limitation of sec. 71(c)(2)↩ is that "the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum." Application of this limitation is not at issue in the instant case.
7. Gertrude waived her attorney-client privilege at trial in this Court after we made assurances that she was advised and fully understood her rights in regards to Crowell's testimony.↩