John P. WOOLEY, Executor of the
Estate of John M. Wooley,
Deceased, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. IP 88–1355–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 12, 1990.

Judgment March 3, 1990.

Sydney L. Steele and David M. Berry, Lowe Gray Steele & Hoffman, Indianapolis, Ind., for plaintiff.

### ENTRY

DILLIN, District Judge.

This cause is before the Court on cross-motions for summary judgment. For the following reasons, the Plaintiff's motion is granted in part and denied in part.

### Background

The decedent, John M. Wooley, operated a lumber business in central Indiana for many years. In 1956, the decedent and his son, John P. Wooley, formed the John M. Wooley partnership to manage the lumber business. Under the articles of partnership, the decedent retained final control over all partnership decisions.

The articles of partnership were amended in 1978. The amended articles admitted two new partners, John S. Wooley and Daniel T. Wooley, the decedent's grandsons. The articles provided that the decedent would have 55 of the 100 votes cast on all partnership decisions, and that he would be entitled to 54% of the partnership profits.

Due to liability concerns, the partnership transferred all of its assets to a corporation, the John M. Wooley Lumber Company, Inc., on June 25, 1979. The articles of partnership were then amended to provide that the "character of the business of the partnership is that of holding, owning and voting shares of the capital stock" of the corporation. The decedent retained his majority control of the partnership.

The decedent made gifts to his partners' individual capital accounts from his individual capital account in the partnership. These gifts were reported on the partnership tax returns and were also reported on gift tax returns. No gift tax was paid, however, because the gifts were within the annual exclusion amount. The annual gifts were made in the following amounts:

*1964–1977:* $6,000.00 each year to John P. Wooley

*1978–1981:* $6,000.00 each per year to John P. Wooley, John S. Wooley and Daniel T. Wooley

*1982–1984:* $10,000.00 each per year to the same three donees

The decedent also used his wife's annual exclusion for the gifts made from 1964–1981 thereby bringing these gifts within the annual exclusion amount.

John M. Wooley died on May 15, 1984. His executor, the plaintiff John P. Wooley, timely filed a federal estate tax return on May 15, 1984. This return claimed that no estate tax was due. In February, 1988, the government assessed a deficiency against the estate of $39,592.03 in estate taxes and $9,755.69 in related interest. The estate made a commitment to pay the deficiency and interest in installments; the estate has paid $32,150.53 thus far. Subsequently,

the estate filed a claim for the refund of the deficiency and interest on June 17, 1988. The government denied the estate's claim on October 6, 1988.

The estate commenced this action by filing a complaint on November 21, 1988. In his complaint, the executor again seeks a refund of the estate tax deficiency which has been paid. The executor also asks that further installments of the deficiency be abated. Finally, he seeks interest and attorney's fees from the government. The complaint incorporates arguments made in the estate's refund claim that the government erred in disallowing the gift tax annual exclusion for the decedent's lifetime gifts to his partners' capital accounts.

*Discussion:*

Summary judgment, pursuant to Rule 56, F.R.Civ.P., is proper only when there is no genuine issue of material fact. *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984). The burden of establishing the lack of any genuine issue of material fact is upon the movant, and all doubts are to be resolved against him. *Yorger v. Pittsburgh Corning Corp.,* 733 F.2d 1215, 1218 (7th Cir.1984). As the United States Supreme Court has recently observed:

> Neither do we suggest that the trial court should act other than with caution in granting summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 255–56, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202, 216 (1986).

The government argues that the plaintiff's motion for summary judgment, seeking repayment of the assessed deficiency, should be denied for two reasons. First, the decedent's lifetime gifts do not qualify for the annual exclusion from gift tax and thus must be included in his estate as taxable gifts. Second, even if the gifts were excludable, the assessed deficiency should not be repaid because the decedent's partnership interest was undervalued on the estate tax return. In either case, the

government argues, the estate owes tax which it failed to report on its return.

## I. Gift Tax Annual Exclusion:

■ This is a case of first impression. The government notes in its brief that there are no reported cases in which a court has determined whether transfers to a partnership capital account qualify for the annual exclusion from gift tax. The court's research has failed to uncover any such case.

Under the Internal Revenue Code, a donor is not required to pay gift tax on the first $10,000 "of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year." 26 U.S.C. § 2503(b) (1989). The annual per donee exclusion was set at $3,000 when the decedent made his initial gifts in 1964–1981. Congress increased the annual exclusion to $10,000 effective December 31, 1981. There is no dispute that all of the decedent's lifetime gifts were within the annual per donee exclusion amount.

However, the government argues that the decedent's gifts were not gifts of a present interest. Rather, the government contends that they were gifts of future interests which are expressly excluded from the gift tax annual exclusion. The Seventh Circuit has held that donees receive a present interest if they "acquire an interest capable of present and immediate enjoyment.…" *Howe v. United States,* 142 F.2d 310, 312 (7th Cir.1944), *cert. denied,* 324 U.S. 841, 65 S.Ct. 585, 89 L.Ed. 1403 (1945). Donees receive a future interest when they acquire an interest which is "limited to commence in use, possession, or enjoyment at some future date or time." *Id.* Current regulations define a present interest as "[a]n unrestricted right to the immediate use, possession, or enjoyment of property or the income from property (such as a life estate or term certain)." 26 C.F.R. § 25.2503–3(b) (1989).

One of the most common means used to make annual exclusion gifts to family members is the so-called "Crummey" trust. In *Crummey v. Commissioner of Internal*

*Revenue,* 397 F.2d 82 (9th Cir.1968), the donor made gifts in the annual exclusion amount to an irrevocable family trust each year. Under the trust, each beneficiary was entitled to immediately withdraw the annual exclusion gift in cash by making a written demand on the trustee before the end of the calendar year. The court held that the donor had made gifts of a present interest because the trustee could not legally resist a beneficiary's demand for his annual exclusion gift. *Id.* Consequently, the Court reasoned, the donees had the immediate and unrestricted right to possess and enjoy the donor's annual gifts. *Id.*

Like the beneficiaries in *Crummey,* the donee-partners in this case received gifts of a present interest because they had the immediate and unrestricted right to possess and enjoy the decedent's gifts to their partnership capital accounts. Under the Uniform Partnership Act [UPA] as adopted in Indiana, each partner has the right to be "repaid his contributions [to the partnership], whether by way of capital or advances to the partnership property...." Ind.Code 23-4-1-18(a) (1989). A partner's capital contribution to the partnership is usually represented by his capital account. Thus, the capital account of a partner is "a liability, a debt of the partnership to a partner." *Hamilton Airport Advertising v. Hamilton,* 462 N.E.2d 228, 239 (Ind.App. 1984).

Case law developed under the UPA holds that absent a contrary provision in the partnership agreement, a partner is entitled to be repaid his capital account upon demand. *Heath v. Spitzmiller,* 663 S.W.2d 351, 355 (Mo.App.1983); *In re Marriage of Wilson,* 110 Ill.App.3d 809, 66 Ill.Dec. 508, 512, 443 N.E.2d 31, 35 (1982); *Petersen v. Petersen,* 284 Minn. 61, 169 N.W.2d 228, 230 (1969). Therefore, once an asset is posted to a partner's capital account, the partner has the right to "draw it out and use it as he chooses ... as so much cash put to his credit". *Hamilton,* 462 N.E.2d at 238–39 (quoting *Molineaux v. Raynolds,* 54 N.J.Eq. 559, 35 A. 536 (N.J.Ch.1896)).

In the case at hand, the gifts were made to the donee-partners' capital accounts. Under the UPA, each partner had the right to withdraw those gifts because there were no restrictions on the withdrawal of capital accounts in the partnership agreement. Put another way, the decedent could not legally resist another partner's demand for the repayment of his capital account. Thus, as in *Crummey,* each donee had the unrestricted, immediate right to withdraw and enjoy his gift "as so much cash put to his credit". *Id.* Accordingly, the decedent made gifts of a present interest which qualified for the annual exclusion from gift tax.

The government's arguments that the decedent only gave gifts of future interests do not withstand scrutiny either because they have no support in the record or because they are based on readily distinguishable cases. First, the government's argument that the decedent retained the power to deny another partner's request for repayment of his capital account has no basis in the record. In its brief in opposition to the plaintiff's motion for summary judgment, the government states that

> John M. Wooley reserved to himself the power to direct the operations of the partnership, including the power to deny any requests for distributions of partnership capital accounts.

Not surprisingly, the government fails to cite any provision of the UPA or the partnership agreement to support this assertion. To the contrary, the partnership agreement in no way gave the decedent the right to deny requests for the repayment of capital accounts. Since the partnership agreement was silent on this point, each partner had the unrestricted right to withdraw funds from his capital account under the UPA. *Heath v. Spitzmiller,* 663 S.W.2d 351, 355 (Mo.App.1983); *In re Marriage of Wilson,* 110 Ill.App.3d 809, 66 Ill. Dec. 508, 512, 443 N.E.2d 31, 35 (1982); *Petersen v. Petersen,* 284 Minn. 61, 169 N.W.2d 228, 230 (1969).

Second, the government's arguments by reference to case law are similarly unpersuasive. For example, the government attempts to analogize this case to cases

where the consent of a majority of the beneficiaries was necessary before any beneficiary could require a distribution of his annual gift from a family trust. *Ryerson v. United States*, 312 U.S. 405, 61 S.Ct. 656, 85 L.Ed. 917 (1941); *Blasdel v. Commissioner of Internal Revenue*, 478 F.2d 226 (5th Cir.1973); *Howe v. United States*, 142 F.2d 310 (7th Cir.1944).

After discussing these cases, the government states that "[i]f all the partners in the John M. Wooley partnership were to agree, a distribution with respect to a partner's capital account could be made. Under the rationale of *Ryerson, Howe,* and *Blasdel,* this requirement of joint action before distribution means the gifts involved were of future interests." However, these cases are distinguishable on the facts because the John M. Wooley partnership agreement does not require joint action of the partners before a distribution from a capital account may be made.

The government also attempts to analogize this case to cases where the donor made gifts to a closely-held corporation whose shareholders were the intended donees. *Chanin v. United States*, 183 Ct.Cl. 840, 393 F.2d 972 (1968); *Heringer v. Commissioner of Internal Revenue*, 235 F.2d 149 (9th Cir.1956), *cert. denied,* 352 U.S. 927, 77 S.Ct. 225, 1 L.Ed.2d 162 (1956). In *Chanin,* the donors in effect transferred shares of stock in a closely-held corporation (63rd Street Corporation) to a second closely-held corporation (Green Acres). The shareholders of Green Acres claimed that they had thereby received gifts of a present interest. The court rejected this argument, reasoning in pertinent part as follows:

> [T]here could be no distribution of dividends from the 63rd Street property (whether in cash, property, obligations or stock) except by resolution of the board of directors of Green Acres or common consent of the stockholders .... [N]o single shareholder could have compelled the payment of a dividend or the distribution of the property of the gifts." *Chanin,* 393 F.2d at 976.

After reviewing these cases, the government argues that "[l]ike the board of directors of the corporations in *Heringer* and *Chanin,* John M. Wooley alone had the power, short of court action, to make distributions to the donees from the capital accounts." Once again, the government relies on the unfounded assumption that the decedent retained the right to block distributions from partnership capital accounts. These cases are distinguishable on the facts as well because, unlike the shareholders in *Chanin,* a single partner in the John M. Wooley partnership "could have compelled the payment ... or the distribution of the property of the gifts" made by the decedent. *See Chanin,* 393 F.2d at 976.

Thus, the government's attempt to classify the decedent's gifts as future interests whose enjoyment required the assent of others is unavailing. Rather, under the UPA and the partnership agreement, each partner had the unrestricted and immediate right to withdraw gifts made to his capital account. Accordingly, the decedent's gifts qualify for the annual exclusion from gift tax. Consequently, the government erred below in treating them as taxable gifts.

## II. Estate Tax Valuation:

▮ In its second objection to the estate's motion for summary judgment, the government disputes the estate's valuation of the partnership interest which the decedent held on the date of death. The partnership agreement gives the surviving partners the option to purchase the decedent's interest in the partnership "at its capital book value to be determined by George S. Olive & Co. ... using generally accepted accounting principles...." Using this valuation formula, the estate reported on its tax return that the decedent's partnership interest was worth $41,580.60.

The government contends that the decedent's interest in the partnership was worth considerably more than the estate claimed on its tax return. The applicable regulations provide that the value of a business interest as established in an option to purchase

will be disregarded [unless] ... the agreement represents a bona fide business arrangement and not a device to pass the decedent's shares to the natural objects of his bounty for less than a full and adequate consideration in money or money's worth. 26 C.F.R. § 20.2031–2(h) (1989).

The regulations expressly apply this provision, regarding a decedent's interest in a closely-held corporation, to a decedent's interest in a partnership. 26 C.F.R. § 20.2031–3(c) (1989).

In order to ensure that the option is a bona fide business arrangement, the value of the decedent's interest in the partnership for estate tax purposes is "the net amount which a willing purchaser ... would pay for the interest to a willing seller, neither being under compulsion to buy or to sell and both having reasonable knowledge of relevant facts." 26 C.F.R. § 20.2031–3 (1989). The regulations specify certain factors which should be considered in determining what a willing seller would pay for the business interest. These factors include, *inter alia,* a fair appraisal of the business assets (including good will), the demonstrated earning capacity of the business and the degree of control of the business represented by the interest to be valued. 26 C.F.R. § 20.2031–3(a)–(c) (citing 26 C.F.R. § 20.2031–2(f), (h) (1989)).

At this point, neither party has presented evidence regarding whether these factors are reflected in the estate's proffered valuation of the decedent's partnership interest. Given the fact sensitive nature of the valuation inquiry and the lack of evidence before the Court, the plaintiff's motion for summary judgment on the valuation of the decedent's estate is not ripe for consideration at this time.

### Conclusion:

For the foregoing reasons, the plaintiff's motion for summary judgment is granted in part. The plaintiff is entitled to exclude from the decedent's taxable estate the value of the annual exclusion gifts that he made to his partners' capital accounts. That portion of the plaintiff's motion seeking summary judgment on the valuation of the decedent's estate is denied.

### JUDGMENT

The plaintiff and defendant, by their respective counsel, have filed their "Stipulation for Entry of Judgment" whereby the parties agreed that judgment should be entered in favor of the plaintiff and against the defendant in the amount of $34,666.91 plus interest according to law, and that the judgment entry should include an order that no further payments are due and owed by the plaintiff to the defendant with respect to the defendant's assessment of an estate tax deficiency against the plaintiff, subject only to the defendant's right to appeal the Court's entry of February 12, 1990 granting in part the plaintiff's motion for summary judgment and denying the defendant's motion for summary judgment, time for said appeal running from the date of the entry of this order.

The Court, being duly advised, now finds that the parties' agreement should be approved and that judgment should be entered for the plaintiff and against the defendant in accordance with the parties' "Stipulation for Entry of Judgment."

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the plaintiff shall have judgment against the defendant in the amount of $34,666.91 plus interest according to law, and that no further payments from the estate pursuant to the assessment of tax deficiency assessed against the plaintiff by the defendant are due or will become due.